WELLS, FARGO & Co., Appellants, *v.* PATRICK WALL, Appellee.

*Chancery.—Appeal from Multnomah.*

1. A party being ignorant of an essential fact at the time of trial in the court below, seeks to stay execution, &c.   Under the statute, " that the court may, in its discretion, &c., at any time within one year, &c., relieve a party from a judgment, order, or other proceeding taken against him, through his mistake, inadvertence, surprise, or excusable neglect,"—*Held,* that the party had an adequate remedy at law.
2. Party must show due diligence.

THIS is an appeal from an order or decree of WAIT, C. J., dissolving an injunction granted by him at chambers, upon the filing of the complainants' bill, February 23d, 1860.   At the March term following of the Circuit Court for Multnomah County, the defendant moved to dissolve the injunction and dismiss the bill, and assigned the following grounds for the allowance of the motion :

1st. The court has no jurisdiction.

2d. The complainants have an adequate remedy at law.

3d. The bill shows that the questions at issue have been tried and determined at law.

4th. Bill does not show necessary diligence in preparing for the trial at law of the case of Wall *v.* Wells, Fargo & Co.

5th. Bill prays for injunction, for the purpose only of procuring impeaching and cumulative evidence.

6th. None of the exhibits referred to in said bill are attached thereto.

7th. There is no equity in the bill.

8th. The bill asks for equitable relief.   Upon this motion the court dissolved the injunction and dismissed the bill. The complainants bring this appeal.

*G. H. Cartter*, of counsel for appellants.

*A. C. Gibbs*, of counsel for appellee.

STRATTON, J. Lord Coke regarded it as the reproach of his time, and against which he declaimed with a quaint but strong vehemence, that equity was made to invade and overturn the legitimate functions of the common law. The practice of which he complained may, in some sense, be said to be reversed; at least, many of the strong barriers, which separated the two jurisdictions of law and equity, in the march of liberal ideas, have been swept away; and law tribunals are now clothed by statute with many of the powers to grant new trials, and to set aside hard judgments, which formerly belonged to the courts of chancery. At no very remote period, the want of such a power in law courts sent the suitor to another tribunal only to multiply actions and increase his costs.

The first and second points made by defendant, in his motion, may be merged and considered together. It may be premised that courts of equity never did interfere with legal proceedings, while there was a full and adequate remedy at law. Nor will this court interfere with judgments at law, and take jurisdiction, unless it shall appear that the party has used due diligence, exhausted every means, and failed through ignorance of some fact; or was prevented from availing himself of his defence by fraud, accident, or by the act of the opposite party, unmixed with negligence or fault on his part. (*Foster* v. *Wood*, 6 *Johns. Ch. R.* 89; *The Marine Ins. Co. of Alexandria* v. *Hodgson*, 7 *Cranch*, 332; *Truby* v. *Wanzer*, 5 *How.* 141.)

It is not pretended by the bill that the defence was an equitable one, and not available at law; but that the party was in ignorance of an essential fact at the time of the trial; and such fact did not come to complainants' knowledge until it was too late to move for a new trial.

Admitting all this to be true, it is difficult to perceive how it would avail complainants.

The action at law, between these parties, was finally determined at the December term of the Supreme Court, 1859; and this bill was filed February 23d, 1860, with the purpose of staying the execution.

By section 73, page 94, of the statutes of this State, it is provided, " that the court may, in its discretion, &c., at any time within one year, &c., relieve a party from a judgment, order, or other proceeding taken against him, through his mistake, inadvertence, surprise, or excusable neglect."

It was as competent for the Circuit Court to set aside the judgment for any cause here shown, as for this court to do so, had no such act been passed.

This statute might have been, and probably was intended to save litigants the necessity of resorting to a Court of Chancery, to avail themselves of a purely legal defence, justly existing, but not available at the trial, but who had been concluded by the judgment at law. This is a reasonable construction of the statute; and if we are right in giving it this interpretation, it would seem to be conclusive of the merits of this bill.

The third point made in the motion is determined by what has been said above.

None of the exhibits referred to in the bill are annexed thereto; and the consideration of the fourth and fifth points made by the motion, must proceed upon such facts as are disclosed by the statements upon the face of the bill. Placing the most liberal construction upon these, we are of the opinion that no such case is made, as would warrant this court in reversing the decree of the chancellor.

Do complainants show such diligence as entitles them to relief on the ground of surprise or accident?

The key to all the evidence, which is referred to, but omitted to be produced on the trial, was, or ought to have been, in the possession of the complainants:

The principal evidence in the case was the testimony of James O'Neil himself, who issued the certificates, and claimed authority for so doing under his letter of appointment. Wells, Fargo & Co. must have had copies of all such appointments, and of all such instructions to their agents. Why was not a copy of such appointment presented to O'Neil, on his examination as a witness; and thus given the witness the

opportunity of verifying his construction of that instrument; or, on the contrary, to have then laid the foundation for weakening his testimony?

Of the time and place the defendants in the other forum had due and ample notice. If they negligently failed to attend such examination, but relied upon the statements of the witness, or failed to take such steps as their interests demanded, they cannot now be heard to complain.

Again, the bill states explicitly, that the complainants posted and published notices of the fact that their agents were furnished with written instructions of their powers and duties.

What diligence have they shown, when matters of such public notoriety were omitted to be produced upon the trial? They allege that such testimony was of importance to them, and we grant that it was; but we cannot admit that any diligence was used, when it is stated that they could not find a witness, by whom to prove it during the pendency of the suit at law. In "*Sewell* v. *Treeston, 1st Chan. Cases,* 65, upon a fact somewhat analogous to the one before us, the Court of Chancery refused assistance, where the defendant at law had written a letter, which the plaintiff could not prove at the trial, and which would have discharged him." See, also, *Schrœpfel* v. *Shaw,* 3d *Comstock's R.* 452; *Marine Ins. Co. of Alexandria* v. *Hodgson,* 7 *Cranch,* 332; *Bateman* v. *Willes, 1st Sch. & Lefroy,* 201; *Floyd* v. *Jaques,* 6 *Johns. C. R.* 479; *Earl of Oxford's Case,* 2d *Leading Cases in Equity,* 97; *American Notes, passim.*

Finally, courts of law under the statutes of this State, being clothed with ample powers for granting new trials, or opening judgments, it may well be doubted whether this court ought in any case to enjoin a judgment at law, when the case presents no equitable grounds for setting aside the verdict.

In the case of *Simpson* v. *Hart,* the court used the following language: " Before courts of law were in the exercise of their present liberal jurisdiction over the subject of new trials, the parties were frequently forced into equity to be re-

lieved from oppressive verdicts." (3 *Black. Com.* 388; *Vaux* v. *Shelly*, *Finch*, 472.) Since, however, that jurisdiction has been well established and freely exercised, on equitable as well as legal grounds, the party failing in his application at law for a new trial will not be relieved in equity, at least, upon the same merits already discussed, and fully within the discretion of a court of law. Where courts of law and equity have concurrent jurisdiction over a question, and it receives a decision at law, equity can no more re-examine it, than the courts of law in a similar case could re-examine a decree of the Court of Chancery. Upon examination of the numerous authorities, most of which have been referred to by the counsel in this cause, it will be seen, that as the courts of law have extended their jurisdiction over this subject, the courts of equity have withdrawn their jurisdiction over it; and this is in accordance with the general principle, that "where a court of law can furnish an adequate remedy, the court of equity will not interfere."

There is no pretence that the verdict of the jury in the law case was against the weight of evidence; and the failure of the complainants to attach their exhibits to the bill, if for no other reason, would place the court in great embarrassment as to whether a case had been made out, granting that the court had jurisdiction, and, in a proper case, ought to exercise it.

For these reasons, we think the decree of the chancellor ought to be affirmed.