Argued December 3, 1958, affirmed June 10, 1959

# JAMES & YOST, INC. *v.* STATE BOARD OF HIGHER EDUCATION

340 P. 2d 577

*Stuart W. Hill,* Portland, argued the cause for appellant. On the briefs were Tooze, Kerr, Hill, Dougherty & Tooze, and Keller & Keller, Portland.

*John D. Nichols* and *Lloyd C. Hammel,* Salem, Assistant Attorneys General, argued the cause for respondent. With John D. Nichols on the brief were Robert Y. Thornton, Attorney General, and E. G. Foxley, Deputy Attorney General, Salem.

Before PERRY,* Chief Justice, and ROSSMAN, LUSK, McALLISTER** and SLOAN, Justices.

* Chief Justice when case argued.
** Chief Justice when this decision was rendered.

PERRY, J.

Plaintiff, James & Yost, Inc., an Oregon corporation, brought this action to recover for work and labor performed under a construction contract entered into with the defendant State Board of Higher Education of the State of Oregon. The contract relates to the remodeling of Villard Hall and the construction of a new theater building on the University of Oregon campus.

Plaintiff, being dissatisfied with the amount recovered for extra work done at the request of defendant, and because of the refusal of the trial court to accept plaintiff's theory of the measure of recovery under the contract, has appealed.

At the outset, we are met with the contention of the defendant that the State of Oregon is the real party in interest and that the state has not consented to be sued, therefore, plaintiff cannot maintain this appeal. *Schrader v. Veatch, et al.,* 216 Or 105, 337 P2d 814; *Lucas v. Banfield et al.,* 180 Or 437, 177 P2d 244; *United Contracting Co. v. Duby,* 134 Or 1, 292 P 309; *Mohler et ux. v. Fish Commission,* 129 Or 302, 276 P 691.

■■ There can be little question but that the action is one against the state. The State Board of Higher Education is not a separate and distinct entity, granted attributes of sovereignty, but is an instrument or arm of the state, charged with carrying out one of the functions of government, to-wit, the education of the peoples of the state. ORS 351.010. It has such powers and duties only as the state entrusts to the Board and these powers and duties are set forth by statutory

enactment. *McClain v. Regents of the University,* 124 Or 629, 265 P 412.

Article IV, Section 24, of our Constitution provides:
"Provision may be made by general law, for bringing suit against the State, as to all liabilities originating after, or existing at the time of the adoption of this Constitution;  *  *  *."

Except in a few instances, not pertinent here, it is clear from this constitutional provision that only the legislature may permit judicial action to be maintained against the state.

The plaintiff points out that in this case defendant appeared generally, and from this argues that defendant, by thus appearing, waived its immunity; citing *Clark v. Barnard,* 108 US 436, 2 S Ct 878, 27 L ed 780; *Maguire v. Monaghan,* 206 Misc 550, 134 NY Supp2d 320, affirmed 285 App Div 926, 139 NY Supp2d 883, appeal denied 285 App Div 1049, 1129, 141 NY Supp2d 501; *Parker v. Moore,* 222 Ark 811, 262 SW2d 891; *Jackson County v. McGlasson,* 167 Tenn 311, 69 SW2d 887; *Regan v. Babcock,* 196 Minn 243, 264 NW 803; *Salem Mills Co. v. Lord,* 42 Or 82, 69 P 1033, 70 P 832.

■ While it is true sovereign immunity from suit is a "personal privilege which it may waive at pleasure," *Clark v. Barnard,* supra, a study of these cases immediately shows the fallacy of plaintiff's contention. In each of these cases the sovereign was either plaintiff or intervened seeking affirmative relief. These cases hold, and we think properly, that in such a situation, as to the relief sought, the sovereign has consented to a determination of the issue in its own courts and cannot then claim it is not to be bound by the adjudication.

■ While it may be contended by the plaintiff that

under general rules of procedure the defendant appeared generally by filing a demurrer instead of a motion to quash, it must be quite obvious that the general rule, relied upon by the plaintiff, cannot apply, since under the Oregon Constitution only the people by legislative act may waive the state's immunity from suit. This they have not done either by granting that authority to its agents, the attorney general or the defendant.

Plaintiff also contends that the legislature by general law has authorized it to maintain this suit by reason of the provisions of ORS 351.060, which, so far as applicable, reads as follows:

"The State Board of Higher Education may:
"* * * * *

"(3) Acquire, receive, hold, control, convey, sell, manage, operate, lease, lend, invest, improve and develop any and all property, real or personal, given to any of the institutions under the control of the State Board of Higher Education by private donors, whether such gifts are made to the State Board of Higher Education or the State of Oregon.
"* * * * *

"(5) Institute, maintain and participate in suits and actions and other judicial proceedings, in the name of the State of Oregon, for the foreclosure of such mortgages [referring to mortgages authorized by subsection (4) of the same section] or for the purpose of carrying into effect any and all of the powers, duties and authority given to the State Board of Higher Education by this section, ORS 351.070 and 351.150."

Plaintiff's argument, that this statute permits the maintenance of this action, is grounded (1) on the fact that this construction work was done upon land donated to the State of Oregon, and (2) that the word "improve" contemplates and includes the erection of

buildings upon the donated land, thus falling within the general powers and duties granted the defendant.

From this deduction, that the erection of buildings upon donated land is an authorized power and duty of the Board of Higher Education, plaintiff concludes that the legislature, in using the words "participate in suits and actions and other judicial proceedings" for the purpose of carrying into effect its powers and duties in the name of the state, in effect, by this statute consents to the Board being sued.

■ It is the general rule that statutes waiving the immunity of the sovereign are to be strictly construed. "General words or language of a statute that tends to injuriously encroach upon the affairs of the government receive a strict interpretation favorable to the public and, in the absence of express provision or necessary implication, the sovereign remains unaffected." 3 Sutherland Statutory Construction, 3rd ed, 183, ch 63, § 6301; *Schrader v. Veatch,* supra, *Federal Land Bank v. Schermerhorn,* 155 Or 533, 64 P2d 1337.

■ The words "institute," "maintain" and "participate" used in the statute are all affirmative in nature. The word "participate" is derived from two Latin words, "pars" meaning "part" and "capio (capere)" meaning "to take part in," and connotes to the average person the thought of "sharing with others." Webster's New International Dictionary, 2d ed.

Since we are constrained to a strict interpretation of the statute, we cannot construe this word as permitting the State Board of Higher Education to consent to a purely defensive participation in a suit or action, but there must be on the part of the Board some affirmative relief sought to protect and carry out its statutory duties. As used in the statute, "to partici-

pate" grants the State Board of Higher Education authority to join with others in the prosecution of a suit or action, or to interplead in a suit or action to obtain affirmative relief.

The defendant has not cross-appealed seeking any relief, and the judgment of the trial court must be affirmed.