Argued June 4, reversed July 15, 1963

# JARRETT *v.* WILLS
## 383 P. 2d 995

*Louis S. Bonney,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief was Robert Y. Thornton, Attorney General, Salem.

Frank M. Ierulli, Portland, filed a brief for respondent.

Before McAllister, Chief Justice, and Rossman, Perry, Sloan, O'Connell, Goodwin and Denecke, Justices.

## SLOAN, J.

Plaintiff was assaulted and injured by a man who had been an inmate of the Oregon Fairview Home. Prior to the injuries complained of the inmate had been given a leave of absence, pursuant to ORS 427.150, by Irvin S. Hill, the then Superintendent of Fairview Home. Plaintiff brought this action to recover for her injuries. She alleged that Superintendent Hill had been negligent in granting the leave of absence to the inmate and that he was also negligent in providing a means of supervision of the inmate while on leave. Superintendent Hill died before this action was filed. The named defendant, Russell M. Wills, was the administrator of Dr. Hill's estate. Other defendants were named in the complaint but they are of no significance here.

Defendant, of course, claimed that Dr. Hill was immune from this action. The trial court denied the bar of immunity and this action was tried to a jury. A verdict and judgment were entered in favor of plaintiff. Defendant appeals.

It is contended here that the question of Dr. Hill's immunity was not properly presented by the pleadings and was, therefore, waived. The issue of immunity in this case is of such public importance that we will forego the pleadings question and decide the matter of immunity. The end result in a case of this kind is that a judgment can or cannot be entered against the

defendant. The case may be one, such as *Salem Mills Co. v. Lord,* 1902, 42 Or 82, 69 P 1033, 70 P 832, in which evidence was required in order to decide the immunity of the official being sued. Or it may be a case wherein it can be decided by the allegations of the complaint that a judgment could not be entered on the facts alleged. *Federal Land Bank v. Schermerhorn,* 1937, 155 Or 533, 64 P2d 1337. In either case, if immunity is shown to exist a judgment against the state or the immune official cannot be entered.

It is now settled that in this state only the legislature can waive immunity, *James & Yost v. Board of Higher Edu.,* supra, 1959, 216 Or 598, 340 P2d 577; *Vendrell v. School District No. 26C et al,* 1961, 226 Or 263, 360 P2d 282. There could be no claim of legislative waiver in this case. The same cases make it equally conclusive that an action against an agency of the state, such as the Fish Commission, is one against the state. It has not been decided whether or not this immunity protects an alleged negligent performance of a duty by an administrative official. To decide that question it is of first concern to look to the duties imposed upon the official.

In the instant case the statutory authority of the superintendent and the rules and regulations of the Board of Control, of which we take notice (ORS 41.410), as to the release of an inmate enlighten us as to the full scope of the superintendent's powers and responsibilities in respect to his actions involved in this case. The allegations of the complaint in this case could only have held the superintendent liable for his actions as the superintendent, not as an individual. Those allegations all related to the duties and responsibilities of Dr. Hill that were imposed upon him by law.

The pertinent part of the statute, ORS 427.150 allowing leaves of absence, provides:

"(1) The superintendent may grant leave of absence to any inmate of the Oregon Fairview Home pursuant to the rules and regulations of the Board of Control.  *  *  *."

The regulations of the Board of Control vest complete discretion in the superintendent. Other sections of the Code relating to the Fairview Home vest other broad discretionary powers in the superintendent. It is also noted that he must accept, in the chronological order of the commitment, all of those committed to the home. He, statutorily, is the state's keeper of those committed to his care.

The cases, both state and federal, that have examined the immunity of a governmental official for alleged negligent performance of duty are too numerous to cite or mention. Reference to Jennings, Tort Liability of Administrative Officers, 1937, 21 Minn L Rev 263; 3 Davis, Administrative Law Treatise, 1958, Chapter 26; 2 Harper & James, The Law of Torts, 1956, § 29.8, page 1632, et seq; Prosser on Torts, (2d ed 1955), page 780 et seq, provides a dissection and an analysis of the many cases and of the rationale thereof. Each of the authors just cited also expose the confusion found in the cases; a confusion and conflict created by the efforts of the courts to decide when a public officer should or should not be held immune from liability for the alleged negligent performance of his official duties.

Generally, the courts have said that performance of a discretionary function is immune while a ministerial act is not. It is easy to discover that the boundaries thus fixed are not immutable. Even a cursory

examination of the several kinds of administrative action will reveal that so called discretionary and ministerial duties frequently overlap and more frequently are indistinguishable. In defense of the courts' efforts to bring some stability into the problems created by the cases it can be said that this is little different than other unnumbered areas of the law wherein the courts, and the scholars, grope for words or phrases that will set apart and define one kind or degree of human conduct from another. It might also be said that courts are not alone to blame for the inability of words to always convey a precise meaning or limit the scope of the conduct the word is intended to imply. In this instance, however, we need not assume the burden of deciding where, on a descending scale of authority and conduct, the act of an official lacks immunity. The duties and functions of the superintendent are such as to place that official near to the top of the scale of immunity, well above any disputed area of conduct.

From *Barr v. Matteo,* 1959, 360 US 564, 573, 574, 79 S Ct 1335, 3 L Ed2d 1434, we learn:

> "It is not the title of his office but the duties with which the particular officer sought to be made to respond in damages is entrusted—the relation of the act complained of to 'matters committed by law to his control or supervision,' Spalding v. Vilas, supra (161 US at 498)—which must provide the guide in delineating the scope of the rule which clothes the official acts of the executive officer with immunity from civil defamation suits."

The test applied by the court for immunity from libel is the same as the immunity we are concerned with here.

The state has assumed the burden of caring for those persons eligible for commitment to Fairview

Home. The Home "* * * shall be quasi-educational in its nature. * * * The superintendent shall be a well-educated physician." ORS 427.010. Formerly the Board of Control, now the "Mental Health Division" thereof, exercises certain control and supervision of the Home, ORS 430.020. However, as before mentioned, the statutes and the regulations of the Board impose upon the superintendent almost exclusive control of the care, treatment, training and discharge of the patients. His responsibilities require him to make constant discretionary judgment. Like the Board of Parole and Probation or the Superintendent of the State Hospital, he is required, as the State's keeper of these unfortunates and in behalf of the state, to judge and govern human beings and human conduct; a judgment devoid of any of the standard of weights and measures available for the decisions made by other public officials. There would be few of his decisions that would not be discretionary. And it is as certain as human existence that he will make mistakes. Because of this it is unthinkable that he should be, individually, or that the state because of him, should be held liable for a mistake not dictated by an unlawful purpose. And this would be so whether his conduct is measured by a rule based on "discretionary conduct" or upon public policy. Either rationale, as found in the authorities before cited, would place immunity upon the judgments of the official now charged.

In his characteristic language Judge L. Hand, expresses the thought we have adopted:

"* * * Again and again the public interest calls for action which may turn out to be founded on a mistake, in the face of which an official may later find himself hard put to it to satisfy a jury of his good faith. There must indeed be means of

punishing public officers who have been truant to their duties; but that is quite another matter from exposing such as have been honestly mistaken to suit by anyone who has suffered from their errors. As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation. Judged as res nova, we should not hesitate to follow the path laid down in the books." *Gregoire v. Biddle,* 1949, USCA 2d Cir, 177 F2d 579, 581.

Except in jurisdictions wherein immunity no longer exists, we have found no case, nor any reference to one, which would deny immunity to an official having the responsibility existing in this case. A recent case most nearly in point is *Somers v. Osterheld,* 1956, 335 Mass 24, 138 NE2d 370. In *Somers* the superintendent of an institution similar to Fairview was charged with negligently removing a small boy patient from a place having a fenced restraint to a place where no restraint existed. The court noted that the defendant-superintendent's action was "* * * in the exercise of a discretion conferred upon him by statute * * *," and summarily denied any liability. Our own case of *Schrader v. Veatch et al,* 1959, 216 Or 105, 108, 337 P2d 814, is actually controlling in the instant case when it was said: "It would be an anomaly to permit a personal judgment to be had and enforced solely against an officer of the state for carrying out the duties imposed upon him by statute." And see cases collated in § 26.01, 3 Davis, Administrative Law Treatise, supra, at page 512. Professor Davis concludes that: "Recent state decisions imposing liability

[for exercise of discretionary power] are exceptional and usually rest on special reasons."

■ It is our view, therefore, that the trial court could not enter a judgment on the facts alleged in the complaint and the action should have been dismissed.

Reversed.