Argued and submitted June 11, 1980; resubmitted in banc February 12, affirmed February 18, reconsideration denied April 9, petition for review allowed May 5, 1981 (291 Or 1)

ESPINOSA,
*Respondent Cross-Respondent, Cross-Appellant,*
*v.*
SOUTHERN PACIFIC TRANSPORTATION
COMPANY,
*Respondent Cross-Appellant,*
*and*
SCHOOL DISTRICT NO. 40, McMINNVILLE,
*Appellant Cross-Respondent.*

(No. A7705-06426, CA 12346)

624 P2d 162

William H. Morrison, Portland, argued the cause for appellant - cross-respondent. On the briefs were G. Kenneth Shiroishi, and Morrison, Dunn, Cohen, Miller & Carney, Portland.

James H. Clarke, Portland, argued the cause for respondent - cross-appellant. With him on the briefs were Laurence F. Janssen, and Spears, Lubersky, Campbell & Bledsoe, Portland.

Raymond J. Conboy, Portland, argued the cause for respondent - cross-respondent - cross-appellant. With him on the briefs were Garry L. Kahn, and Pozzi, Wilson, Atchison, Kahn & O'Leary, Portland.

BUTTLER, J.

Joseph, C. J., dissenting in part.

Roberts, J., dissenting in part.

---

*Campbell, J. Pro Tempore, *vice* Young, J.

Young, J., not participating.

**BUTTLER, J.**

This case requires us to examine for the first time the dollar limitations on tort liability of governmental agencies in ORS 30.270. Two related issues are presented. The first is whether the statutory dollar limitation is waived if it is not asserted before judgment. The second is whether the legislature intended that the ceiling on the amount of liability be held to be waived when a government exercises the authority contained in ORS 30.282 and purchases liability insurance in excess of the statutory limits.[1]

These questions are presented in the context of a wrongful death action which arose out of a collision between a school bus owned and operated by defendant School District No. 40, McMinnville (district) and a locomotive owned by defendant Southern Pacific Transportation Company (SP) on September 8, 1976. Plaintiff's decedent, his daughter, one of 44 passengers on the bus, was killed in the crash.

In August, 1978, plaintiff, as personal representative of the deceased and for the benefit of himself and his wife, brought this action, seeking damages in the amount of $500,000. The jury returned a verdict in favor of plaintiff and against both defendants in the amount of $302,139. The jury found SP to be 15 percent at fault and the district to be 85 percent at fault. The trial court entered a judgment against both defendants for the full amount of the verdict.

The district subsequently filed a motion to amend the judgment, raising for the first time the dollar limitation on governmental tort liability found in ORS 30.270(1)(b), and asked that the judgment against it be amended and reduced to $100,000 pursuant to that statute. The district was covered by a total of $1 million of insurance under three policies applicable to this accident. SP contended (1) that the district had waived the $100,000 limitation on liability by not asserting it before judgment

---

[1] This issue was raised in *Wright v. Scappoose School Dist.,* 25 Or App 103, 548 P2d 535 (1976). We did not reach the question because the appeal was brought from the granting of a demurrer and the issue had not been raised in the pleadings. 25 Or App at 106, n 2.

and (2) that even if the limitation had been timely asserted, the purchase of insurance in excess of the $100,000 statutory limitation on liability had raised the ceiling on the district's liability to the extent of the coverage of its insurance policies.[2]

The trial court ruled that the $100,000 limitation was jurisdictional and could not be waived by a failure to assert it before judgment or by the purchase of insurance. The court entered an amended judgment, awarding damages of $100,000 against the district and $302,139 against SP.

SP and plaintiff appeal, assigning as error the amendment of the judgment. SP also assigns as errors the admission of certain evidence at the trial, contending that it is entitled to a new trial. SP's and plaintiff's assignments of error are raised on their cross-appeals. The district brought the initial appeal in this case, attacking certain of the trial court's evidentiary rulings, but that appeal has been dismissed on the district's motion.[3]

The questions presented require us to set forth some of the recent history of governmental tort liability in this state.

In *Vendrell v. School District No. 26C et al*, 226 Or 263, 360 P2d 282 (1961), decided six years before the passage of the Tort Claims Act, Oregon Laws 1967, chapter 627, ORS 30.260 *et seq*, the Supreme Court discussed the effect of the purchase of liability insurance on sovereign immunity. *Vendrell* was an action brought by a student who was injured while participating in a school-sponsored football game. The complaint alleged that the school district had an insurance policy covering its liability,

---

[2] After the entry of the amended judgment in this case, SP brought a declaratory judgment against the district and its insurers asking for a declaration that SP is entitled to recover from the defendants any amounts it might pay in excess of 15 percent of any judgment arising out of the collision between the school bus and the train. SP's contentions in that action were in all essentials the same as are stated above in this action, and the decision in the appeal of the declaratory judgment action is controlled by our holding in this case. *See Southern Pacific Trans. v. School District No. 40,* 50 Or App 607, 624 P2d 176 (1981).

[3] The district is still a party to this appeal on the cross-appeals.

purchased pursuant to former ORS 332.180, which then provided:

"Any district school board may enter into contracts of insurance for liability covering all activities engaged in by the district, for medical and hospital benefits for students engaging in athletic contests and for public liability and property damage covering motor vehicles operated by the district, and may pay the necessary premiums thereon. Failure to procure such insurance shall in no case be construed as negligence or lack of diligence on the part of the district school board or the members thereof."

The court, after noting that if free to do so it would eliminate the doctrine of sovereign immunity as applied to school districts, concluded that its power to effect the law of tort immunity was limited by constitution and statute.

"Our Constitution is framed on the premise that the state is immune from suit and that if immunity is lifted it shall be done so by the action of the legislature. Article IV, § 24 provides as follows:

" 'Provision may be made by general law, for bringing suit against the State, as to all liabilities originating after, or existing at the time of the adoption of this Constitution; but no special act authorizeing (sic) such suit to be brought, or making compensation to any person claiming damages against the State, shall ever be passed.' "

"* * * * *

"To determine, then, that a school district in this state may incur tort liability we must find that a provision *waiving sovereign immunity* has been 'made by general law.' " (Emphasis supplied.) 226 Or at 278-9.

*Vendrell* held that in enacting former ORS 332.180, the legislature had intended to lift the *immunity* of school districts "to the extent that insurance is actually provided." 226 Or at 282. That holding was based on the language permitting the purchase of insurance "for liability covering all activities engaged in by the district," which was held to be a "general law" within the meaning of Article IV, section 24. Subsequently in *Hale v. Smith,* 254 Or 300, 460 P2d 351 (1969), and *Elmore v. Aloha Sanitary Service,* 256 Or 267, 473 P2d 130 (1970), which both arose before the Tort Claims Act, the Supreme Court made it clear that the purchase of insurance was not a waiver of statutory immunity unless there was some "general law"

authorizing that purchase; *i.e.,* only the legislature could waive immunity.[4]

In 1967, the legislature passed the Tort Claims Act, Oregon Laws 1967, chapter 627, making governments *generally liable* for torts, with more or less specific exceptions. *See* ORS 30.265.[5] Conceptually the 1967 legislature's approach to governmental tort immunity was based on a policy decision totally different from that found to exist in *Vendrell. See Dowers Farms v. Lake County,* 288 Or 669, 680, 607 P2d 1361 (1980). The act also provided for a $50,000 ceiling on liability to any one claimant and a $300,000 ceiling for any number of claims arising out of a single incident.[6] ORS 30.270, the relevant statute here, was amended in 1975[7] and now provides in pertinent part:

---

[4] In both cases, the court noted that while ORS 243.110 (repealed by the Tort Claims Act, Oregon Laws 1967, chapter 627, section 12) authorized governments to purchase liability insurance to protect their officers and employees, it did not authorize the purchase of insurance to protect the agencies themselves. It was therefore held that in neither case had immunity been lifted by the purchase of insurance. The court thereby avoided a re-examination of the reasoning in *Vendrell.*

[5] ORS 30.265, as amended in 1969 and 1975, provided in relevant part when the present cause of action arose:

"(1) Subject to the limitations of ORS 30.260 to 30.300, every public body is liable for its torts and those of its officers, employes and agents acting within the scope of their employment or duties, whether arising out of a governmental or proprietary function. As used in this section and in ORS 30.285, 'tort' includes any violation of 42 U.S.C. section 1983.

"(2) Every public body is immune from liability for:

"(a) Any claim for injury to or death of any person or injury to property resulting from an act or omission of an officer, employe or agent of a public body when such officer, employe or agent is immune from liability.

"(b) Any claim for injury to or death of any person covered by any workmen's compensation law.

"(c) Any claim in connection with the assessment and collection of taxes.

"(d) Any claim based upon the performance of or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused.

"(e) Any claim which is limited or barred by the provisions of any other statute.

"(3) Neither a public body nor its officers, employes and agents acting within the scope of their employment or duties are liable for injury or damage:

"(1) Liability of any public body or its officers, employes or agents acting within the scope of their employment or duties on claims within the scope of ORS 30.260 to 30.300 *shall not exceed:*

"(a) $50,000 to any claimant for any number of claims for damage to or destruction of property, including consequential damages, arising out of a single accident or occurrence.

"(b) $100,000 to any claimant for all other claims arising out of a single accident or occurrence.

"(c) $300,000 for any number of claims arising out of a single accident or occurrence." (Emphasis supplied.)

The $100,000 limit found in section (1)(b) above was in effect when this cause of action arose.

Former ORS 30.280, which was a part of the original 1967 Act,[8] provided for the purchase of insurance as follows:

"(1) The governing body of any public body may procure insurance against liability of the public body and its officers, employes and agents.

"(2) Such insurance may include coverage for the claims specified in subsection (2) of ORS 30.265.[8a] *The procurement of such insurance shall not be deemed a waiver of immunity.*

"(3) If the public body has authority to levy taxes, it may include in its levy an amount to pay the premium costs for such insurance." (Emphasis supplied.)

---

"(a) Arising out of riot, civil commotion or mob action or out of any act or omission in connection with the prevention of any of. the foregoing.

"(b) Because of an act done or omitted under apparent authority of a law, resolution, rule or regulation which is unconstitutional, invalid or inapplicable except to the extent that they would have been liable had the law, resolution, rule or regulation been constitutional, valid and applicable, unless such act was done or omitted in bad faith or with malice."

[6] Oregon Laws 1967, ch 627, § 4.

[7] Oregon Laws 1975, ch 609, § 13.

[8] Oregon Laws 1967, ch 627, § 6.

[8a] Section 6 of the 1967 Act was so codified by Legislative Counsel. The Act said: "specified in section 3 of this Act." That section read:

This provision was repealed in 1975,[9] and ORS 30.282 was enacted:

"The governing body of any local public body may procure insurance against liability of the public body and its officers, employes and agents acting within the scope of their employment or duties, or may establish a self-insurance fund against such liability of the public body and its officers, employes and agents and if the public body has authority to levy taxes, it may include in its levy an amount sufficient to establish and maintain such a fund on an actuarially sound basis.[10]

Against this historical background, we examine first the question whether the district waived the dollar limitation on liability by not asserting it prior to judgment. We hold that it did not.

---

"(1) Section 2 of this Act does not apply to:

"(a) Any claim for injury to or death of any person or injury to property resulting from an act or omission of an officer, employe or agent of a public body when such officer, employe or agent is immune from liability.

"(b) Any claim for injury to or death of any person covered by the Workmen's Compensation Law.

"(c) Any claim in connection with the assessment and collection of taxes.

"(d) Any claim based upon an act or omission of an officer, employe or agent, exercising due care, in the execution of a valid or invalid statute, charter, ordinance, resolution or regulation.

"(e) Any claim based upon the performance of or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused.

"(f) Any claim against a public body as to which the public body is immune from liability or its liability is limited by the provisions of any other statute.

"(2) As to any claim enumerated in this section, a public body shall be liable only in accordance with any other applicable statute."

It should be noted that subsection (2) contemplated that a public body might be liable for the claims listed in subsection (1) under *some other statutes* than the Tort Claims Act, *e.g.,* the Workmen's Compensation Law. The language in ORS 30.280 very plainly was intended to permit insurance to be procured for non-Tort Claims Act liabilities without that procurement having any effect on the limited immunities preserved by the Tort Claims Act.

[9] Oregon Laws 1975, ch 609, § 25.

[10] This statute was amended in 1977 in a manner not relevant to our inquiry. Or Laws 1977, ch 428, § 1.

■■    Because sovereign immunity enjoys constitutional status in Oregon, *Vendrell v. School Dist. No. 26C et al, supra; Gast v. State of Oregon,* 36 Or App 441, 585 P2d 12 (1978), *rev den* (1979), only the legislature can waive that immunity. *Jarrett v. Wills,* 235 Or 51, 383 P2d 995 (1963); *Vendrell v. School Dist. No. 26C et al, supra; Hale v. Smith, supra; James & Yost v. Board of Higher Edu.,* 216 Or 598, 340 P2d 577 (1959). With passage of the Tort Claims Act, the legislature waived immunity generally, with exceptions not relevant here. However, liability is limited to $100,000 for a single claim. By ORS 30.270 the legislature has indicated the extent to which sovereign immunity has been waived, and only the legislature can waive the ceiling on liability set forth in that statute. The limitation is part and parcel of the liability (*i.e.,* the waiver of immunity) and is, therefore, jurisdictional. The school board's failure to assert the limitation before judgment was not a waiver.[11]

■■    As support for the argument that the district waived the right to assert the dollar limitation by not raising it before judgment, plaintiff cites cases which stand for the proposition that arguments not raised by a motion for directed verdict cannot be raised for the first time by motion for judgment notwithstanding the verdict or on appeal. However, the cases cited do not deal with motions

---

[11] This court has stated several times, in dicta, that sovereign immunity is an affirmative defense which can be waived if not timely raised. *Moody v. Lane County,* 36 Or App 231, 236 at n 2, 584 P2d 335 (1978); *Comley v. State Bd. of Higher Ed.,* 35 Or App 465, 468 at n 3, 582 P2d 443 (1978); *Gast v. State of Oregon, supra,* 36 Or App 441 at n 4; *see also, Hulen v. City of Hermiston,* 30 Or App 1141, 569 P2d 665 (1977) (burden on defendant to plead immunity).

Those dicta are not dispositive of the issue before us. With the exception of *Gast,* which held that the doctrine of sovereign immunity did not apply because the relief sought was not against the state as sovereign, the cases all dealt with whether the act complained of was discretionary or ministerial. At common law, sovereign immunity did not extend to employees of the state, but such employees were immune where performing discretionary functions. *Comley v. State Bd. of Higher Ed., supra* at 482. Under the Tort Claims Act, discretionary functions are excepted from the legislative waiver of immunity. Former ORS 30.265(2) (in effect at the time this cause of action arose); current ORS 30.265(3)(c). Those cases dealt with either common law or statutory liability to which there was a possibility of an exception. In those circumstances, *i.e.,* where the *legislature* has waived immunity and set up exceptions to the waiver, it is reasonable to require the defendant to raise the exception which made it immune. The case before us presents, not an exception to liability, but a limitation on the extent of liability.

raising issues which, if resolved in favor of the moving party, would limit the jurisdiction of the court. For instance, in *Johnson v. Smith,* 24 Or App 621, 546 P2d 1087, *rev den* (1976), we noted that while pleading of notice is jurisdictional under the Tort Claims Act, proof of notice is not, and a failure to prove notice could not be asserted unless raised below.[12] An objection to the jurisdiction of the court may be taken either before or after judgment, and a court of general jurisdiction is empowered to correct its judgments on matters of jurisdiction. *Salitan et al v. Dashney et al,* 219 Or 553, 347 P2d 974 (1959). The school board's motion brought into question the jurisdiction of the court, and it was properly considered after judgment.[12a]

■ We must now decide whether the trial court was correct in its granting of the motion. The answer turns on whether the legislature itself abrogated the limitation on liability by providing for the purchase of insurance.

SP relies on ORS 332.435 (former ORS 332.180), which was the statute relied upon in *Vendrell,* and ORS 30.282 for the proposition that the school board was empowered to buy insurance covering plaintiff's claim. ORS 332.435 has gone through a series of amendments since the *Vendrell* case arose, one of which removed a comma, entirely changing the meaning of the statutory language relied upon in *Vendrell.*[13] We have no need to determine whether this change was significant, because the Tort Claims Act clearly provides for the purchase of insurance and specifically provides that the act supersedes all conflicting laws and ordinances. ORS 30.300. '

---

[12] The only arguably relevant case cited to us is *Portland Machinery Co. v. Sistig,* 283 Or 249, 583 P2d 536 (1978). In that case the Supreme Court held that a statute limiting to $10 the amount of costs which the trial court could order as a condition to postponement could not be invoked on appeal because it had not been made a ground for objection at trial. *See also Spaulding v. McCaige et al,* 47 Or App 129, 614 P2d 594 (1980) *Portland Machinery* is not controlling in this case because of the constitutional status of sovereign immunity in this state.

[12a] This is the issue raised and argued extensively below and massively briefed and vigorously argued in this court. It is what the dissent is all about, too. It may well be a straw man made deceptively strong by reiteration. We accept the issue as dispositive, but as we will point out *infra,* in the discussion it is based on a misapprehension.

[13] ORS 332.180 (now ORS 332.435) was amended in 1961. Or Laws 1961, ch 575, § 5. The emphasized language below was added at that time.

Former ORS 30.280, set forth *supra,* specifically provided that the purchase of insurance would not be deemed a waiver of immunity. This provision, which contained no express limitation on the amount of coverage, was criticized by one writer as creating an "incongruous situation" whereby "a public body is authorized to purchase liability insurance to cover situations where there can be no liability." Lansing, *The King Can Do Wrong! The Oregon Tort Claims Act,* 47 Or L Rev 357, 370 (1968). (Professor Lansing's comment overlooks what section 3 of the 1967 Act actually said. So does the dissent. *See* n 8a, *supra.*) After it was repealed in 1975, and ORS 30.282 was enacted, the statute no longer mentioned any effect of the purchase of insurance on immunity. Plaintiff and SP argue that the legislature intended, by removing the nonwaiver language, to provide *for* waiver of immunity by the purchase of insurance. In short, they assert that the legislature intended to reinstate the rule in *Vendrell.* We note that the legislative history is silent on this point. We know only that ORS 30.282 was enacted in order to provide express authorization for self-insurance by governmental bodies. *See* Minutes of Joint Ways and Means Committee, February 28, 1975.

We reject the idea that *Vendrell* was either intentionally or inadvertently brought back to life. Since the enactment of the Tort Claims Act, the analytical process compelled by the statute is utterly different than it was at the time of *Vendrell.* Now, as a general rule, all governmental agencies in the state of Oregon are liable for the

"Any district school board may enter into contracts of insurance for liability covering all activities engaged in by the district, *including but not limited to the organization, supervision, control or operation of traffic patrols, as defined in ORS 336.450,* for medical and hospital benefits for students engaging in athletic contests *and in traffic patrols, as defined in ORS 336.450,* and for public liability and property damage covering motor vehicles operated by the district, and may pay the necessary premiums thereon. Failure to procure such insurance shall in no case be construed as negligence or lack of diligence on the part of the district school board or the members thereof." (Emphasis supplied.)

In the course of a major revision of the education laws, the above statute was amended in 1965 to delete the first emphasized phrase above. Or Laws 1965, ch 100, § 155. The comma following the word "district" was deleted along with the phrase, so that the language relied upon in *Vendrell* now reads "all activities engaged in by the district for medical and hospital benefits for students engaging in athletic contests and in traffic patrols ***." The statute was again amended in 1967 and is now numbered ORS 332.435. Or Laws 1967, ch 627, § 3.

torts of their officers, agents and employees; unless one of the statutory exceptions applies, there is liability; if there is liability, the amount of that liability is subject to the monetary limitations stated in ORS 30.270(1). The *Vendrell* process is no longer applicable because there is a general rule of liability, *not* a general rule of nonliability.

It is essential to note the language of ORS 30.270(4):

"*Liability* of any public body *** on claims arising out of a single accident or occurrence, *shall not exceed* in the aggregate the amounts limited by subsection (1) of this section." (Emphasis supplied.)

That is the overriding declaration of policy. As the Supreme Court said in *Brennan v. City of Eugene,* 285 Or 401, 411, 591 P2d 719 (1979):

"Prior to the enactment of [ORS 30.265(1)], this court stated:

" '*** [O]ur power to choose the policy of this state with reference to the right of persons to recover for torts committed by agencies of the state has been limited both by constitution and statute.' [*Citing Vendrell,* 226 Or at 278.]

"We believe these sentiments are equally applicable now that governmental tort immunity has been abolished by statute. In abolishing governmental tort immunity, the Legislature specifically provided for certain exceptions under which immunity would be retained, ORS 30.265(3), and we find no warrant for judicially engrafting an additional exception on to the statute."

The second sentence of former ORS 30.280(2) ("The procurement of such insurance shall not be deemed a waiver of immunity.") appears to have been a direct carryover from ORS 243.110, which was repealed in 1967 and partly reenacted in substance in ORS 30.280. In part the purpose may have been to make sure that the Supreme Court would get the message that *Vendrell* had been specifically overruled by the enactment of the Tort Claims Act. Be that as it may, we have previously pointed out, *supra,* n 8a, that the cross-referenced section in former ORS 30.280 (*i.e.,* ORS 30.265) was not the section containing the limitations on liability, ORS 30.270. It would, therefore, appear that ORS 30.280 had *no* relevance *ever* to the interpretation of ORS 30.270, which has always plainly said that where liability

exists, it "shall not exceed" the stated limits. There is in all of this "no warrant for judicially engrafting an additional exception on to the statute."

When the 1975 legislature repealed ORS 30.280 and substituted ORS 30.282, it may have intended no more than the elimination of anachronistic verbiage. We note that the new statute uses the phrase "insurance against liability of the public body ***." ORS 30.282, in the light of ORS 30.270(4) had nothing to do with "waiver" of liability limits; that issue was dealt with expressly earlier on in the statutory scheme of the Tort Claims Act.

■ The repeal of ORS 30.280 and the enactment of ORS 30.282 did not alter the overall scheme of the Tort Claims Act. To hold that authority to purchase insurance is an implied waiver of the *express and unconditional limitations* on liability in ORS 30.270(1) would be to charge the legislature with granting immunity in one section and almost immediately taking it away in another section of the same statute. There is no rational basis for such a conclusion.[14] We hold that the liability of the district in this case is limited to $100,000.[15]

■ There are left to resolve two other assignments of error by SP. The first is based on the colloquy set out in the margin[16] relating to the testimony of plaintiff's expert

---

[14] It may then be asked why the legislature would "permit" insurance to be purchased in excess of the amounts of statutory tort liability. At least two reasons come to mind: First, there is no way that a *state* legislature can limit the liability of the state or its local governments under *federal* law; and, second, liability insurance may be purchased and is in fact purchased to cover many kinds of liability that may or may not be subject to *tort* claims. Moreover, it is still an open question of what is the extent of the authority conferred by ORS 30.282.

[15] Plaintiff and SP, in their reply briefs, suggest that under *Christensen v. Epley,* 287 Or 539, 601 P2d 1216 (1979), the district is liable to the extent of $200,000. *That* point was not raised at any earlier time, and we decline to consider it.

[16] "Q Mr. Crommelin, based on your investigation and the various materials that you related to us and your personal observation and your measurements and all the factors you just listed, do you have an opinion on whether the crossing was adequately protected for vehicular traffic and specifically, this school bus, on September 8, 1976?

"MR. JANSSEN: Your Honor, excuse me. I want to make an objection at this time. I would object to this witness giving this testimony in the abstract

about the allegedly hazardous condition of the crossing and whether it should have been protected by automatic gates and flashing lights. Prior to giving his opinion the witness had testified at some length about a "checklist" of some 22 elements he considered in evaluating this crossing. While SP and plaintiff disagree about the exact numbers, they

without relating it to the events of this accident. I think the relevant question is whether it was safe for this driver on this day when he stopped at that stop sign. We're trying this case, not a case of traffic coming from all directions doing all sorts of things.

"THE COURT: Read the question back to me, will you?

"(Whereupon, the previously [sic] question was read by the reporter as requested.)

"THE COURT: Doesn't that include that?

"MR. JANSSEN: No, Your Honor, because he's asking him for an opinion without a proper foundation. This expert has not said what he understands the facts of this accident to be.

"THE COURT: Objection is overruled. He may express his opinion.

"A Yes, I do have an opinion.

"Q And what is your opinion?

"A My opinion is that this crossing was hazardous on September 8th, 1976, and that the crossing protection on that date was inadequate and that, in my opinion, there should have been automatic gates and flashing lights installed prior to that particular date; and if they had been installed, it is unlikely that this collision would have occurred.

"* * * * *

"Q (By Mr. Kahn) *** Do you have an opinion with reference to the crossing at Madison Street in Lafayette as to what protection should have been present on September 8, 1976, to protect vehicular traffic?

"A Yes.

"Q And what is your opinion?

"MR. JANSSEN: Same objection, Your Honor, unless it relates to this bus after having stopped at the stop sign.

"THE COURT: Overruled.

"A My opinion would be that there should have been flashing lights and gates at the crossing. And with the gate on down, then the bus would have stopped back farther from the crossing and would not have proceeded when the train was imminent. These gates, using an Oregon formula called the JAQUA Formula, and I did the calculation using the State's techniques. If you put in gates at a crossing with stop signs, you would expect on the average to get an 85 percent reduction in accidents. Now, that is total accidents. I would expect at this crossing you would get virtually a hundred percent elimination of collisions at this crossing if gates had been installed."

agree that some of those elements were possible causal factors in this accident and some were not.

SP says in its brief:

> "This is not a case in which an expert witness relies on many considerations, one or two of which are immaterial, so that his opinion as a whole remains useful to the jury. In this case, his opinion was almost entirely based on considerations that had nothing to do with SP's duty to the plaintiff. It did not effect SP's duty that motorists in other circumstances would encounter hazards at the crossing, or that a device responsive to their needs might coincidentally have prevented this accident.
>
> "*** Mr. Crommelin's testimony lacked any foundation in the material facts of the case, and the court committed reversible error in receiving it."

We are inclined to share plaintiff's doubt that the exception taken really raised the issue SP now argues. Nevertheless, we will treat it as adequate, and we believe the objection was properly overruled. In the first place, the question, in form a proper one within the rule in *Wulff v. Sprouse-Reitz Co., Inc.,* 262 Or 293, 306, 498 P2d 766 (1972), in the respect that no hypothetical question was necessary. Furthermore, the witness' previous testimony and his testimony on cross-examination showed that he was adequately "acquainted with the pertinent facts" (262 Or at 308) to establish his familiarity with the accident itself. Finally, SP's fundamental position that on issues of the hazardous quality of a crossing and the means of ameliorating that condition an expert is limited to only those factors that may have caused the actual accident in litigation is unsupported by authority or principle.

■ In its final assignment of error, SP contends the trial court erred in failing to strike the lookout specification of negligence. Plaintiff alleged only two parts of the standard trinity, excessive speed and failure to keep a proper lookout, but not lack of control. He contends:

> "Speed, lookout and control are closely integrated elements of any tort case involving moving vehicles. Proof directed at any one of these elements tends to constitute inferential proof directed at the other two."

Plaintiff then points to the following language in *Rogers v. Green,* 241 Or 435, 440, 406 P2d 553 (1965):

"Where the trinity 'speed,' 'control' and 'lookout' are alleged and there is evidence of negligence sufficient to raise a jury question, it is only the most uncommon fact situation which will justify submitting to a jury less than all three — and only the most uncommon situation will justify severing 'lookout.' 'Lookout' by its very definition is of the three the least subject to proof by direct evidence. Almost always the extent of lookout must be inferred from other facts, and its adequacy must be determined in relation to 'speed' and 'control.' It is difficult to conceive of many situations in which, given allegations of improper speed, control and lookout and given a jury question as to negligence, it would be error to submit all three to the jury."

We do not agree with the dissenting opinion that failure to allege lack of control in a railroad crossing case negates the observations of the court in *Rogers.* Unlike an automobile case, where the driver may swerve or slow down in controlling his vehicle to avoid a collision, a train may only vary its speed in terms of exercising control. Here, speed and lookout were alleged, and there would be little, if anything, to be gained by adding an allegation of lack of control. Accordingly, unless there is no evidence, or reasonable inferences therefrom, which would permit the jury to find a failure to keep a proper lookout, it was not error to submit that specification to the jury.

■ Concededly, there was evidence that the train crew saw the bus approach the crossing and come to a stop at a safe place, and that when the train was approximately 150 feet from the crossing, the crew saw the bus start up to cross the track, at which time it was impossible to stop the train to avoid the collision. On this evidence, which SP characterizes as uncontradicted, SP contends the case is controlled by *Layne v. Portland Traction Co.,* 212 Or 658, 319 P2d 884, 321 P2d 312 (1958), and *Brown v. Spokane, P. & S. Ry. Co.,* 248 Or 110, 119-20, 431 P2d 817 (1967).[17] In *Layne,* the court said:

---

[17] "Since there is no duty to anticipate the negligence of a traveler approaching a grade crossing, no duty is placed upon the operator of the train to avoid injuring the approaching traveler until such time as a reasonably prudent person could from all the facts available ascertain a traveler is unaware of the approaching train, and, when that determination is made, stop the train, if possible, to avoid striking the approaching vehicle."

"* * * The crew did not fail to see the very object for which the plaintiff says they owed a duty to look; that is, the plaintiff's car, its peril and its movement. * * *

"* * * It is obvious that unless the record contained evidence capable of supporting a finding that the train crew failed to maintain an adequate lookout, the plaintiff's charge upon that subject could not be submitted to the jury. Criticism of the testimony given by the train crew and of our report of it, even though the criticism is so meritorious that it entirely obliterates the crew's testimony, does not establish that the crew did not maintain a lookout." 212 Or at 674, 677.

We cannot say that the situation here is as clear as the court thought it was in *Layne.* It is seldom that a defendant in any collision case is going to admit that he was not keeping a lookout. It is equally rare that there will be direct evidence of a failure to keep a lookout. However, SP's testimony that its employees saw what they should have seen had they been keeping a proper lookout need not be believed by the jury; the failure to keep a lookout may be inferred from other evidence, including circumstantial evidence. We believe, for example, that the evidence of the failure of the train to sound a whistle at all, or the failure to ring the engine's bell, if that evidence is believed, is sufficient for the jury to infer that the defendant did not observe the "blow post" and did not see the school bus; it might also be inferred that defendant was oblivious to the grade crossing the train was approaching until it was too late. Further, the physical facts showing the force of the impact of the train with the bus is an additional premise from which the jury might infer that if defendant had been keeping a proper lookout the train could have been slowed down more than it was prior to impact, even though a collision might not have been averted.

On this state of the record, therefore, we conclude that it was not error to submit the failure of defendant to keep a proper lookout to the jury.

Affirmed.

**JOSEPH, C.J.,** dissenting in part.

SP characterizes its evidence about the lookout issue as uncontradicted. Plaintiff reviews the evidence of

the train's excessive speed and concludes that "[t]he jury could therefore infer that the speed of the train, whatever it was, impaired the crew's ability to keep a meaningful lookout." Similarly, plaintiff urges that the evidence of failure to sound a whistle at all or in accordance with SP's operating rules or to ring the engine's bell, the force of the impact and the fact that the locomotive was being operated in reverse all permitted the jury to disbelieve SP's evidence of adequate lookout.

Plaintiff did not allege failure to exercise control, but excessive speed and failure to sound a timely warning were all specifically alleged as negligence. Moreover, plaintiff withdrew an allegation that operating the train in reverse was negligence. Prior to the time the train was about 150 feet from the crossing, there was nothing for the crew to see to alert them to what the driver would do, and there was no evidence that the accident then could have been avoided.

Perhaps, if plaintiff had alleged speed, lookout *and control,* the logic of *Troupe v. Ledward,* 238 Or 531, 536, 395 P2d 279 (1964), would apply:

> "Speed, control, and the duty to maintain an adequate lookout are interrelated. As speed increases, the duty to be alert and have one's automobile under adequate control increases. Accordingly, when the plaintiff entered the intersection at an impressive speed and saw two cars waiting to enter and also saw three cars approaching from the opposite direction, it was her duty to be alert and maintain a reasonably adequate lookout. Whether her lookout which did not observe the defendant's car until she was entering the intersection and which did not see it again until an instant before the collision was adequate was a jury question."

Given plaintiff's choice not to allege lack of control, I think the reasoning in *Brown,* quoted above, in note 17 of the majority opinion, applied, for there was no evidence that failure to maintain a lookout was a causative factor in addition to the specific acts of negligence also alleged. To hold otherwise would require a conclusion that findings of excessive speed (specifically alleged), failure to sound a warning (specifically alleged) and operating the engine in reverse (alleged but withdrawn) would have permitted the

jury to conclude that SP was liable for another kind of negligence that was not causative.

Submission of the lookout issue was prejudicial error, and there should be a new trial.

**ROBERTS, J.,** dissenting in part.

I dissent from the majority's conclusion that the liability limits of ORS 30.270 bar the plaintiff from recovering damages which exceed those limits from proceeds of the school district's insurance.[1] In my view, the majority is incorrect for two reasons: first, its reasoning is based on the assumption that certain statutory language is relevant to the issue which I think is not; and second, even if the majority's assumption were correct, it misconstrues that language and its relationship to the purposes and provisions of the Tort Claims Act.

Former ORS 30.280(2) provided that "[t]he procurement of such insurance shall not be deemed a waiver of immunity." The majority opinion's treatment of the relationship between the liability limits of the Act and the insurance provision rests on the assumption that that language has bearing on claims which *can* be brought under the Act. The assumption is wrong. The authority to insure against claims which *are* actionable under the Act was originally granted by ORS 30.280(1). *That* subsection contains no non-waiver language of the kind set forth in former ORS 30.280 *(2)*. The latter provided:

> "(2) Such insurance may include coverage for the claims specified in subsection (2) of ORS 30.265. The procurement of such insurance shall not be deemed a waiver of immunity."

Former ORS 30.265(2) enumerated claims from which public bodies *remained* immune. Hence, it was *only* in connection with claims which the Act expressly left immune from suit that ORS 30.280 stated that the procurement of insurance was not to be deemed a waiver of immunity.[2] The

---

[1] Southern Pacific asked that we consider its assignment of error on the lookout issue only if we concluded that the school district's liability was limited to the amounts set forth in ORS 30.270 rather than to the amount of available insurance. Because I would not so conclude, I would not reach the lookout issue.

[2] Undoubtedly, the language the majority quotes from Lansing, *The King Can Do Wrong! The Oregon Tort Claims Act,* 47 Or L Rev 357 (1968) (*see* 50 Or

non-waiver language had nothing to do with claims for which recovery can be had under the Act or with insurance covering such claims.[3]

The key point in the majority's analysis is that the non-waiver language in ORS 30.280 was designed to legislatively overrule *Vendrell v. School Dist. No. 26C et al.,* 226 Or 263, 360 P2d 282 (1961), for purposes of the Tort Claims Act. Because the non-waiver language never related to insurance for claims which *could* be made pursuant to the Act, the majority's point is at best a straw man argument.

It would follow from my understanding of what the non-waiver language in ORS 30.280(2) applied and did not apply to, that *nothing ever* in the Tort Claims Act provided that "immunity" from liability in excess of the ORS 30.270 limits was to exist to the extent insurance above those limits was available to compensate persons making *non-immune* claims. Indeed, since the legislature did expressly provide in ORS 30.280(2) that immunity was not waived by insuring against immune claims, it is most noteworthy that ORS 30.280(1) did *not* contain a parallel provision, to the effect that the liability limits for actionable claims are not "waived" by procuring insurance in excess of the limits.

Assuming, however, that I am wrong in my understanding that former ORS 30.280(2)'s non-waiver language has nothing to do with the case and that I am therefore too harsh in characterizing the majority's central point as a straw man argument, I would nevertheless conclude that the majority has failed to knock its straw man down. I do not agree that, if the non-waiver language of former ORS

---

App at 571), was directed at the Act's authorization to purchase insurance for *immune* claims, and not, as the majority indicates, at any effect of insurance on the limits of liability for *actionable* claims. The incongruous situation to which Lansing adverted was that "a public body is authorized to purchase *liability* insurance to cover situations where there can be *no liability.*" 47 Or L Rev at 370. The emphasis in the quote is Lansing's. Had the author not done so, I would add my own emphasis to the word "no."

[3] As the majority points out, the nonwaiver language was deleted in 1975 when ORS 30.280 was repealed and ORS 30.282 was enacted to replace it. The majority does not point out, however, that ORS 30.282 also omits the specific authorization which ORS 30.280 contained for public bodies to insure against immune claims.

30.280 is relevant, the legislature's abandonment of that language in ORS 30.282 is not relevant.

The majority states that the legislative history is silent on the intent of the legislature in repealing the statutory language mentioning the effect of the purchase of insurance on immunity. That is true. But that does not prevent the making of certain assumptions regarding the deletion of that language. It can be assumed that the legislature acted with knowledge of the decisional law relevant to the matter, including *Vendrell v. School Dist. No. 26C et al, supra, see Harris v. Board of Parole,* 39 Or App 913, 593 P2d 1292 (1979); *State v. Waterhouse,* 209 Or 424, 307 P2d 327 (1957). Further, it can be assumed that by making this essential change in the phraseology of the statute, the legislature intended to change the meaning of the statute. *Roy L. Houck & Sons v. Tax Com.* 229 Or 21, 32, 366 P2d 166 (1961).

The Supreme Court stated in *Swift & Co. and Armour & Co. v. Peterson,* 192 Or 97, 125, 233 P2d 216 (1951), that " 'if words used in a prior statute are omitted, * * * it will be presumed that a change of meaning was intended.' " Therefore, here, even if there were no indicia of legislative intent other than the words the legislature chose to use and chose not to use, its abandonment of the non-waiver language in 1975 is compelling evidence that it intended that the liability limits of the Tort Claims Act no longer apply to injuries covered by insurance — if it *ever* intended otherwise.

Moreover, the presumption of an intent to change the law is not the only support for the conclusion I reach regarding the legislature's purpose. Through the same 1975 Act which repealed ORS 30.280 and enacted ORS 30.282, the legislature also enacted ORS 30.287, relating to the defense of government employes by the employing body. Or Laws 1975, ch 609,§ 20. Subsection (5) of ORS 30.287 provides generally that nothing in *that* section "shall be deemed to increase the limits of liability * * * under ORS 30.270 * * *." The omission of the pre-existing non-waiver language from the insurance provision of the 1975 Act and the inclusion of language of similar import in an unrelated section of the same Act clearly demonstrates

what is already presumptive — that the removal of the language from the insurance provision was not inadvertent.

In addition to undermining the majority's peculiar presumption that the omission of ORS 30.280's non-waiver language from ORS 30.282 was intended to mean nothing, the use of comparable language in ORS 30.287 also negates another proposition critical to the majority's reasoning: That the abandonment of the non-waiver language was nothing more than an "elimination of anachronistic verbiage," 50 Or App at 573, because the legislature understood that the express limitation on liability in ORS 30.270 made reference to the limitation in other sections unnecessary. Moreover, the majority's insistence that the liability limits of ORS 30.270 are necessarily applicable in this context, notwithstanding the authority apparently conferred on public bodies by ORS 30.282 to buy coverage which exceeds the limits, disregards the principle that statutory languge is to be construed with a view to its context and purpose. *See, e.g., Gilbertson et al v. Culinary Alliance et al.,* 204 Or 326, 340, 282 P2d 632 (1955).

The majority states that the purpose of the original non-waiver language, if any, may have been "to make sure that the Supreme Court would get the message that *Vendrell* had been specifically overruled by the enactment of the Tort Claims Act." 50 Or App at 572. Apparently, the majority feels that that message survives the repeal of the language imparting it. I disagree. Nothing in the Tort Claims Act except that repealed language was *ever* even arguably inconsistent with *Vendrell.*

I conclude that the *Vendrell* reasoning is applicable in this case and I would hold that liability under the Tort Claims Act is limited to the amounts set forth in ORS 30.270, except where insurance is procured pursuant to ORS 30.282, in which case liability is limited to the amount of insurance actually available or the ORS 30.270 limit, whichever is greater.[4]

---

[4] I am aware of the Supreme Court's language in *Brennan v. City of Eugene,* 285 Or 401, 591 P2d 719 (1979), stating, after noting that governmental bodies are protected from unlimited liability by ORS 30.270,

ORS 30.282 is a general law of the sort described in *Vendrell* and does not limit the purchase of insurance to the dollar limitations found in ORS 30.270. It is true that ORS 30.270(4) provides that "Liability * * * shall not exceed * * * [the given amounts]." However, when *Vendrell* was decided, total immunity to suit existed and this immunity was considered waived by the purchase of insurance pursuant to statute. Similarly, the purchase of insurance pursuant to the Tort Claims Act in excess of the dollar ceiling on liability should be read as lifting that ceiling to the extent of the coverage purchased.

My application of the *Vendrell* reasoning to this case is in the spirit of recent Supreme Court decisions which note that the Tort Claims Act is remedial legislation which should be liberally construed to allow for redress. *Dowers Farms v. Lake County,* 288 Or 669, 607 P2d 1361 (1980); *Adams v. State Police,* 289 Or 233, 611 P2d 1153 (1980); *Stevenson v. State of Oregon,* 290 Or 3, 619 P2d 247 (1980); *Hall v. State,* 290 Or 19, 619 P2d 256 (1980). In light of these decisions, I see no reason to apply a harsher rule here than was applied in *Vendrell* prior to passage of the Tort Claims Act.

The policy behind the doctrine of sovereign immunity, *i.e.,* protection of the public purse, would in no way be subverted by this position, since liability above the statutory limit cannot exceed the insurance protection held by the governmental body. This would do no more than provide that insurance coverage, purchased with public funds pursuant to statute, be used for the purpose for which it was purchased.

The school board argues that it bought the excess coverage in order to protect itself from possible liability

---

"* * * [w]ithin this range of limited liability, municipalities can further protect themselves by obtaining liability insurance, the cost of which can be allocated through taxation and licensing fees. ORS 30.282. * * *" 285 Or at 408.

However, the effect of the purchase of insurance on the limitation on liability was not the issue before the court. The court was discussing whether to hold a government licensing agent to the "reasonable person" standard of care, and made the above comments to demonstrate that holding the government to this standard would not subject it to unlimited liability.

arising out of out-of-state trips which might take it out of the protection of the Tort Claims Act. The insurance policy, however, was not so limited and the school district did not counter Southern Pacific's assertion that the coverage was applicable to the instant case.

Obviously, public bodies may be *motivated* to buy liability insurance to cover contingencies which the Tort Claims Act does not reach. However, that is no reason for concluding that, when a governmental body procures insurance which covers injuries subject to the Act but which provides dollar coverage in excess of the Act's limits, the insurer should not pay to the extent of its risk. Presumably, the quality and quantity of hazards which the insurance covers and the amount of coverage are reflected in the premiums the public pays. It is noteworthy that neither ORS 30.282 nor its predecessor placed any limitation on the amount of coverage a public body could procure, and did not restrict what the public body could insure against to hazards outside the ambit of the Tort Claims Act. In that context, the conclusion the majority reaches provides a windfall to insurers in the form of premiums paid for by the public for coverage which in fact cannot exist. Speaking of a rule similar to the one propounded by the majority, Prosser comments:

> "The effect of this is to defeat an honest effort to protect the plaintiff, on the part of both the legislature and the insured state agency, merely because the insurance carrier has seen fit to welsh on its agreement; and it scarcely will appeal to anyone who favors honest dealing." W. Prosser, Law of Torts, § 125, p 1011 (3rd ed 1964).

I do not agree that the legislature intended the majority's result.

I would hold that the trial court erred in amending the judgment, and would order the original judgment reinstated.[5]

I respectfully dissent.

Campbell, J., Pro Tempore, joins in this dissenting opinion.

---

[5] The parties do not address the question of how a plaintiff suing a public body under the Tort Claims Act must plead and prove the availability of applicable insurance coverage in excess of the Act's limits. Some of the procedural aspects following from the holding I would reach are addressed in *Vendrell,* 226 Or at 285.