Argued February 27, affirmed July 30, 1929.

# H. H. DIXON *v.* O. G. SIMPSON, Administrator, et al.

(279 Pac. 939.)

212

For appellant there was a brief over the name of *Messrs. Weatherford & Wyatt*, with an oral argument by *Mr. Mark V. Weatherford*.

For respondent there was a brief and oral argument by *Mr. Oscar Hayter*.

For cross-appellant there was a brief over the name of *Messrs. Vinton & Tooze*, with an oral argument by *Mr. Walter Tooze*.

BEAN, J.—The ruling of the court sustaining the demurrers is assigned as error. The complaint alleges in substance as follows: For a number of years prior to his death one I. M. Simpson was the owner of a farm in Polk County, Oregon, which had been leased to plaintiff. The lease provided that title to all the crops should be vested in the lessor until the rent was paid; that during this period plaintiff became indebted to said I. M. Simpson in the sum of $2,800, which was evidenced by a promissory note and secured by a chattel mortgage on certain live-

stock and farm equipment of the alleged value of $4,000, which chattel mortgage was placed of record; that plaintiff was further indebted to said I. M. Simpson at the time of his death in the sum of $2,600, which was evidenced by an unsecured promissory note; that prior to September, 1925, I. M. Simpson died and O. G. Simpson was appointed administrator of his estate. Thereafter, and in September, 1925, the administrator leased the land to plaintiff for a term beginning October 1st, 1925, ending October 1st, 1926, with the following stipulation:

"And it is expressly provided hereby, and this indenture is upon the express condition that all crops grown upon the said farm during the existence of this lease shall be and remain the sole exclusive property of the said lessor until the money rental hereinbefore specified has been paid in full by said lessee to the lessor, anything contained in this lease to the contrary notwithstanding and in case the lessee shall fail to pay the rental, in time and manner as hereinbefore specified, the lessor may take possession of such crops, wherever the same may be found, and may sell and dispose of the same at public or private sale, with or without notice as he may see fit, and out of the proceeds of such sale, may retain rental, or any part thereof when due, rendering overplus, if any, to the lessee."

The complaint then alleges that the plaintiff planted the farm to crops for the season of 1925–1926, consisting of wheat, barley, corn, rye and grass; that during the summer of 1926 the matured crops were harvested and the grain, in an uncleaned condition, was placed in an unmeasured bulk in a warehouse at Monmouth, Polk County, Oregon; that neither the plaintiff nor the defendant, administrator, knew the amount of clean grain in this lot; that plaintiff had shipped the rye grass seed in the amount of 2,718 pounds to one

Charles Sterling at Brownsville, Oregon, under a contract of sale made the year previous, at the time the seed was purchased from Sterling by the plaintiff, and that this rye grass seed was in the Monmouth warehouse in September, 1926, at the time of the contract and settlement hereinafter set forth; all of which the defendant Simpson then knew. Also a quantity of grain raised on said farm had been delivered to defendant Winegar, all of which defendant Simpson knew on the date last mentioned. That thereafter and before said $2,000 in rent secured by said lien in the lease was due, and on September 21, 1926, the defendant Simpson, for the purpose of securing a full, complete and final settlement of said unsecured debt of $2,600 and the said chattel mortgage of $2,800, and the said rent, soon to be due in the sum of $2,000, stated and offered to plaintiff that if plaintiff would, without foreclosure surrender and deliver to said Simpson all of the property described in said chattel mortgage, all of the growing and unharvested crop consisting of twenty acres of corn; the hay in the barn on the farm; the wheat and oats that had been stored in the barn on the farm, together with all the grain and seed then in the Monmouth Co-operative Warehouse, that he would accept said property in full satisfaction, settlement and payment of the said three obligations. The offer was conditioned that the same be accepted forthwith, and then the defendant Simpson would surrender up and cancel of record all evidence of indebtedness, namely, the said chattel mortgage, the said lien provided in the lease and the promissory notes held by said Simpson.

The complaint further alleges that the plaintiff then accepted the offer and surrendered and delivered to defendant all of the property described in the con-

tract and agreement and fully performed and complied with all of the terms and stipulations of said contract and agreement and that defendant Simpson accepted possession of all of said property and has since said time retained the same and disposed of a large part thereof to other persons.

The complaint then alleges the defendant Simpson has failed and refused to comply with his agreement in this, that he has failed and refused to cancel said chattel mortgage of record or at all, and to surrender to plaintiff the promissory note evidenced thereby; that he has failed and refused to surrender the unsecured promissory note and failed and refused to cancel and surrender up the lease and the lien provided therein.

The plaintiff asks, as the major part of his complaint, that the defendant Simpson be compelled by a decree of the court to specifically perform the contract set forth herein and cancel of record the said liens and surrender to plaintiff the said promissory notes, chattel mortgage and lessor's lien.

The complaint continues to allege that in violation of said agreement the defendant Simpson asserts that said lien described in the lease is still in full force and effect and by virtue thereof he still has title to all of the crops grown upon the Simpson farm during the year 1926; that in the fall of 1926 defendant brought an action against the defendant J. E. Winegar for the wheat delivered to said Winegar and in said complaint fraudulently and falsely and in violation of the terms of said agreement, claimed that said lease and the lien therein was still in force, although it had been fully paid and satisfied.

The complaint further sets forth that defendant Winegar was not advised of the said false and fraudu-

lent allegation and was not advised of the full contract and agreement made between plaintiff and Simpson in the settlement of the lien; that defendant Simpson asserted said lien knowing that the same had been paid and satisfied with the intent and purpose of defrauding and injuring plaintiff and the said defendant J. E. Winegar; that therefore defendant Simpson secured a judgment in the amount of approximately $600 against the defendant Winegar by virtue of such claim of title to the grain. It is sought in this complaint to have said judgment canceled and set aside.

It is further alleged that the defendant has filed an action of replevin against one Charles Sterling for the rye grass seed raised upon said farm, wherein defendant is asserting title to the rye grass seed by virtue of said lien, provided in the lease. This cause of action has not yet been tried.

Plaintiff alleges that if defendant is permitted to assert the lien and should prevail in said actions, that the defendants in said actions will then bring actions against the plaintiff, to which he will have no legal defense, and asks the court to settle the whole controversy in one proceeding and avoid a multiplicity of actions.

The answer of defendant and cross-appellant J. E. Winegar is a replica of plaintiff's complaint with a few additional allegations, among which is set forth the bill of sale prepared by the defendant Simpson and executed by plaintiff Dixon, as follows:

"H. H. Dixon, Sold to I. M. Simpson Estate, Airlie, Ore., Sept. 21, 1926, I. M. Simpson farm.

"1st. Livestock and farm implements as enumerated in chattel mortgage as recorded * * for consideration and satisfaction of said mortgage.

"2nd. Twenty acres corn in field, forty tons hay in barn, 150 sacks wheat in barn, 300 sacks oats in barn. Consideration the satisfaction of promissory note dated Oct. 1, 1925, for $2866 signed by H. H. Dixon.

"3rd. Grain and seed in Monmouth Co-operative Warehouse subject to liens for which there is not to exceed $300; for the consideration $2,000 due on lease as recorded * * . It being understood that if the sale of said grain and seed shall exceed $2000 after all just claims are paid said amount shall revert to H. H. Dixon and if $2000 is not realized no further claim shall be had against H. H. Dixon and shall constitute full satisfaction of said lease. H. H. Dixon."

It is also alleged that plaintiff Dixon is insolvent.

An examination and consideration of the record and briefs and arguments of counsel leads us to believe that the cancellation of the chattel mortgage and of the lien provided for in the lease is not the primary object of this suit.

Section 9891, Or. L., provides, in effect, that if a mortgagee, after full performance of the condition of the mortgage, shall for ten days after being thereto requested, and after tender of his reasonable charges, refuse or neglect to discharge the same, as provided by the statute, or to execute and acknowledge a certificate of discharge or release thereof, he shall be liable to the mortgagor, his heirs or assigns, in the sum of $100 damages, and also for all actual damages occasioned by such neglect or refusal.

Section 10181, Or. L., makes the provision of Section 9891, Or. L., applicable to chattel mortgages, or instruments of writing intended to operate as a mortgage of personal property, either alone or with real property.

Neither the plaintiff nor cross-appellant Winegar are proceeding under the statute referred to, nor have

either of them tendered to Simpson the costs or charges for canceling or executing a certificate of discharge or release of the chattel mortgage or lien in the lease.

■ It is asserted by respondent Simpson that the real purpose of this suit is to relitigate the action brought against J. E. Winegar by Simpson as administrator of the estate of I. M. Simpson, deceased, for the possession of the grain sold by plaintiff to Winegar. Dixon was not a party to that litigation. He is not a party to the litigation pending in the case mentioned in Linn County between the administrator and Charles Sterling, and he is not bound by the judgment rendered against Winegar, and will not be bound by any judgment that may be rendered against Charles Sterling in the case mentioned.

■■ Taking the allegations of the complaint as true, and giving 100% force to all the allegations contained therein it is apparent that if the payment of the rental reserved in the lease of plaintiff had been made, as alleged in plaintiff's complaint, that defense could have been made in the action of the administrator against Winegar. A judgment in an action at law cannot be set aside by a suit in equity by alleging that the plaintiff set up in the complaint certain facts or untrue matters. A court of equity cannot inquire into the question as to who told the truth in the law action sought to be set aside. It appears from the complaint that the action was brought and Winegar defended and set up the defense of payment of the rent of $2,000 reserved in the lease of plaintiffs and that he knew of the document dated September 21, 1926, between Dixon and the administrator. The matters alleged in the complaint would

be a full and complete defense in the action at law brought by the administrator against Winegar.

It is alleged that Winegar, while he knew about the agreement, did not know all of the situation and did not discover all of the facts relating to the agreement for the release of the lien contained in the lease until the time of the trial of the law action. It does not appear what facts he had not discovered. Nothing is alleged to show why he did not apply to the court for a continuance of the law action until he could ascertain all of the facts, nor does he set up what diligence he used to inform himself as to all of the facts pertaining to the agreement or of the release of the lien provided for in the lease. So far as appears, Dixon was available as a witness in the law action and may have appeared therein. The agreement between Dixon and the administrator was in writing, or partly in writing at least, and it would naturally suggest to Winegar that he would make inquiry in regard to the same in preparing for the lawsuit.

The administrator, as shown by the complaint, has the property described in the chattel mortgage and to all intents and purposes is the owner of the chattel mortgage mentioned and the property described therein. Practically the mortgage lien and title to the chattels have merged. The uncanceled chattel mortgage is not an encumbrance or cloud upon the title to any property of the plaintiff and there was no particular reason for the cancellation thereof except as it bears upon the retrial of the law action.

Winegar had his day in court in the trial of the law action where apparently the same main question is presented that he presents in this case and that the plaintiff also presents for him in this suit.

■ The trial court heard the case of the administrator *v.* Winegar and was no doubt familiar with all the surrounding circumstances of the present case. We are not in a position to say that, in so far as a technical claim that Dixon is entitled to have the chattel mortgage canceled of record and the lien provided for in the lease released, the learned circuit judge did not exercise a sound judicial discretion in the matter.

■ The right to the granting of the equitable remedy of the specific performance of a contract is not an absolute right, like the right to recover a legal judgment; the granting of such equitable relief is a matter of sound judicial discretion and is controlled by established principles of equity and exercised upon a consideration of all the circumstances of each particular case: Pomeroy's Spec. Perform. (3 ed.), § 35.

. If a court of equity should grant specific performance of every agreement to release or satisfy a chattel mortgage or lien of record which had been paid or satisfied in full where there is no further interest in the property covered by the same on the part of the mortgagor or lienor, it would consume a large part of the time of courts.

■ Public policy demands that there should be an end to litigation, and therefore the courts look with a jealous eye upon suits which have for their object the setting aside of a judgment at law: *Wells-Fargo & Co.* v. *Wall,* 1 Or. 295; 3 Freeman, Judgments (5 ed.), § 1213, p. 2516 et seq.; 34 C. J. 432, § 680 et seq.

■ Neither perjured testimony nor false or fraudulent allegations used in obtaining a judgment is a ground for equitable intervention in a suit to attack the judgment unless the perjury or fraud was collateral to the questions examined and determined in

the former proceeding. Here the same question is sought to be determined in a suit in equity that was apparently determined in an action at law: *Friese* v. *Hummel*, 26 Or. 145 (37 Pac. 458, 46 Am. St. Rep. 610); 3 Freeman, Judgments (5 ed.), § 1231, p. 2564; Id., § 1241, p. 2582.

■ Specific facts must be alleged in a suit to set aside a judgment, showing what steps were taken and what diligence was used by defendant in the first case to procure the testimony relied upon as a basis for setting aside the judgment: *Friese* v. *Hummel*, *supra; Snyder* v. *Vannoy*, 1 Or. 344; 34 C. J. 490, 491.

■ The complaint should state what defenses were made in the first case: *Norton* v. *Harding*, 3 Or. 361.

■ Where a third person, like Dixon, the plaintiff, makes a direct attack upon a judgment obtained against another, he should make averments showing that the equities are in his favor, and he should further state the reason why he did not see that his rights were protected in the first case: 34 C. J. 439.

In the early Oregon case of *Wells-Fargo & Co.* v. *Wall*, 1 Or. 295, at page 296, we read the following language:

"It may be premised that courts of equity never did interfere with legal proceedings, while there was a full and adequate remedy at law. Nor will this court interfere with judgments at law, and take jurisdiction, unless it shall appear that the party has used due diligence, exhausted every means, and failed through ignorance of some fact; or was prevented from availing himself of his defense by fraud, accident or by the act of the opposite party, unmixed with negligence or fault on his part."

This court in the case of *Friese* v. *Hummell*, 26 Or. 145, at pages 149, 150 (37 Pac. 458, 46 Am. St. Rep.

610), points out that perjury is not a ground for equitable jurisdiction and indicates the reason for this decision thus:

"Did the complaint state sufficient facts to entitle the plaintiff to the equitable relief demanded, is the question involved in this suit. A court of equity may, by an original bill in the nature of a bill of review, set aside a decree obtained by the fraud of the prevailing party, where the acts or conduct constituting such fraud were not involved in the consideration of the merits: 2 Freeman on Judgments (4 ed.), Section 485. A judgment or decree procured by perjury is doubtless a fraud, and such as would induce equity to grant relief, were it not for the fact that its existence can rarely or never be ascertained otherwise than by trying anew an issue tried in a former proceeding: 2 Freeman on Judgments (4 ed.), Section 489. Frauds for which a court of equity will set aside a judgment or decree must consist of extrinsic, collateral acts not involved in the consideration of the merits. The credibility of testimony given on the trial of a cause, bearing upon the issue, is intrinsic, and has been considered in reaching the conclusion sought to be impeached; and the case is not the less tried on its merits, and the judgment is none the less conclusive, by reason of the false testimony produced."

No facts are alleged in the complaint or in the answer of the cross-appellant showing what diligence was used by Winegar in the former action to procure the testimony to prove the averments upon which he and the plaintiff now rely to retry the former case and set aside the judgment. It must be set forth in such complaint, the acts showing what diligence was put forth. Mere conclusions will not suffice.

Plaintiff Dixon, of course, knew all about the alleged settlement. He does not aver that he had no

notice of the case of the administrator *v.* Winegar or that he could not have appeared and testified and protected his rights, if any he had in that action.

It has been held that if a third party has notice of a case affecting his rights and fails to see that they are preserved, he will later be precluded from attacking the judgment in equity.

"But a person having a direct pecuniary interest in a suit, who has an adequate remedy at law, or who had full knowledge of the pendency of the suit, and neither sought to become a party thereto nor made any effort to intervene therein so as to protect his rights, cannot after rendition of judgment, sue to set such judgment aside or to restrain its enforcement." 34 C. J. 439.

See Freeman on Judgments (5 ed.), p. 2496, § 1202.

■ In order for equity to exercise its power to cancel a written instrument, special equitable grounds demanding such a remedy must be shown: 2 Bancroft, Code Pleading, § 1098, pp. 1687–1689; 9 C. J. 1161, 1162.

■ Where there is a complete and adequate defense at law to any right sought to be enforced under an instrument, it is only where it may be put to a vexatious use that equity finds cause to cancel such instrument: 2 Pomeroy, Equity Jurisprudence (3 ed.), § 914, pp. 1636, 1637.

■ There is no dispute that Dixon is insolvent and the claim made by him that Winegar, and Sterling if he prevails in the pending action, will come back on him, contains but little merit. In any event, Dixon would have a complete remedy at law according to the averments of his complaint. The judgment sought to be set aside is not *res adjudicata* as to him.

The judgment of the Circuit Court must be affirmed. It is so ordered.   AFFIRMED.

COSHOW, C. J., and BELT, J., concur.

BROWN, J., took no part in the consideration of this case.