Argued and submitted June 1, affirmed November 3, 1981

ESPINOSA,
*Respondent,*

*v.*

SOUTHERN PACIFIC TRANSPORTATION
COMPANY,
*Petitioner,*

*and*

SCHOOL DISTRICT NO. 40, McMINNVILLE,
*Respondent.*

(CA 12346, SC 27675)

635 P2d 638

James H. Clarke, Portland, argued the cause for petitioner. With him on the briefs were Laurence F. Jannsen, and Spears, Lubersky, Campbell & Bledsoe, Portland.

Raymond J. Conboy, Portland, argued the cause for respondent Espinosa. With him on the briefs were Garry L. Kahn, and Pozzi, Wilson, Atchison, Kahn & O'Leary, Portland.

William H. Morrison, Portland, argued the cause for respondent School District. With him on the briefs were G. Kenneth Shiroishi, and Morrison, Dunn, Cohen, Miller & Carney, Portland.

Before Denecke, Chief Justice, and Lent, Linde, Peterson and Tanzer, Justices.

LENT, J.

## LENT, J.

This case requires us to determine whether the concept of limited waiver of governmental immunity, as introduced by *Vendrell v. School District No. 26C et al*, 226 Or 263, 360 P2d 282 (1961), has survived the enactment and amendment of the Oregon Tort Claims Act of 1967. The issue is presented in the context of plaintiff's wrongful death action brought against defendants School District No. 40, McMinnville (hereinafter District) and Southern Pacific Transportation Company (hereinafter SP). The plaintiff's eight-year-old daughter died on September 8, 1976, when an SP locomotive collided with a school bus operated by the District. The collision left 44 children dead or injured and resulted in some 37 actions against the District, SP, or both.

Plaintiff brought this action as personal representative of his deceased daughter and for the benefit of himself and his wife. The jury returned a verdict finding each defendant guilty of negligence which contributed to the cause of the collision. The jury found the District 85 per cent at fault and SP 15 per cent at fault, and assessed plaintiff's damages as $302,139. The trial court entered judgment for the full amount against both defendants.

After judgment was entered, the District, on the basis of ORS 30.270,[1] moved to reduce the judgment against the

---

[1] ORS 30.270:

"(1) Liability of any public body or its officers, employes or agents acting within the scope of their employment or duties on claims within the scope of ORS 30.260 to 30.300 shall not exceed:

"(a) $50,000 to any claimant for any number of claims for damage to or destruction of property, including consequential damages, arising out of a single accident or occurrence.

"(b) $100,000 to any claimant for all other claims arising out of a single accident or occurrence.

"(c) $300,000 for any number of claims arising out of a single accident or occurrence.

"* * * * *

"(4) Liability of any public body and one or more of its officers, employes or agents, or two or more officers, employes or agents of a public body, on claims arising out of a single accident or occurrence, shall not exceed in the aggregate the amounts limited by subsection (1) of this section."

District to $100,000. Opposing this motion, SP introduced evidence showing that the District had three insurance policies, one to the statutory limits on liability prescribed by ORS 30.270(1), that is, $100,000 per claimant, $300,000 per accident, and two excess insurance policies providing applicable coverage to a total of $1,000,000.[2] The trial court granted the motion and entered an amended judgment against the District for $100,000.

Plaintiff and SP both appealed, assigning the amendment of the judgment as error.[3] A panel of the Court of Appeals heard argument on the case and then ordered the appeal resubmitted to the court in banc. That court affirmed the amendment of the judgment, with three judges dissenting in part.[4] The court held that legislative changes had removed the statutory waiver of immunity which we found controlling in *Vendrell,* that the Oregon Tort Claims Act established absolute monetary limits of liability for public bodies and that changes in the statute subsequent to the passage of the Tort Claims Act did not waive these limits to liability. *Espinosa v. Southern Pacific Trans.,* 50 Or App 561, 624 P2d 162 (1981).

We allowed review to consider the specific question whether the monetary limits contained in ORS 30.270(1)

---

[2] The record in this case, and in the related declaratory judgment proceeding, *Southern Pacific Transp. v. School District No. 40,* 50 Or App 607, 624 P2d 176 (1981), shows that the District had three policies of liability insurance. The basic policy with Oregon Automobile Insurance Company provided coverage to an amount of $100,000 per claimant or $300,000 per accident. Excess insurance coverage was provided by policies with Market Insurance Company (from $300,000 to $500,000) and Stonewall Insurance Company (from $500,000 to $1,000,000). On their faces, all three policies were applicable to plaintiff's claim.

[3] The District initially appealed, contesting certain evidentiary rulings made by the trial court. SP, by its answering brief and opening brief on cross-appeal, brought the question of limits on liability before the appellate court, and raised additional evidentiary questions. The various evidentiary questions have been resolved below and do not concern us in this appeal. *See also Southern Pacific Transp. v. School District No. 40, supra* n. 2.

[4] In a separate opinion, Joseph, C.J., dissented from one of the evidentiary rulings not before this court. *See* 50 Or App at 577, 624 P2d at 172. Roberts, J., dissented from the court's ruling concerning the limits of liability. She was joined by Campbell, J., pro tempore. *See* 50 Or App at 579, 624 P2d at 172. References in this opinion to the dissent below are exclusively to the opinion of Roberts, J.

were controlling. ORS 2.520; 291 Or 1 (1981). We hold that these statutory limits control; therefore, we affirm.

## The Rule in Vendrell

■ In resolving a case of limitations to governmental liability, we begin with Article IV, section 24, of the Oregon Constitution, which states:

> "Provision may be made by general law, for bringing suit against the State, as to all liabilities originating after, or existing at the time of the adoption of this Constitution; but no special act authorizeing [sic] such suit to be brought, or making compensation to any person claiming damages against the State, shall ever be passed."

As interpreted by our cases, this immunity of the State attaches also to school districts when they perform governmental (as opposed to merely proprietary) functions. *Lovell v. School Dist. No. 13,* 172 Or 500, 507-508, 143 P2d 236, 237 (1943), and cases cited therein; *Antin v. Union High School Dist. No. 2,* 130 Or 461, 465-466, 280 P 664, 665, 66 ALR 1271 (1929). Until this court decided *Vendrell v. School District No. 26C et al, supra,*[5] no statute had been construed to be a "general law" waiving the immunity of school districts afforded by Article IV, section 24,[6] of the Oregon Constitution.

It was against the background of this constitutional provision that we considered *Vendrell.* There, plaintiff was a high school student who sustained severe injuries in a school-sponsored football game in October, 1953. He brought an action for damages for alleged negligence against the school district and various school officials. The defendants demurred to the complaint, asserting governmental immunity, and the trial court sustained the demurrers.

On appeal, plaintiff contended that the school district's purchase of insurance under then ORS 332.180 (now, with changes, ORS 332.435) constituted a waiver of the

---

[5] *See also Vendrell v. Sch. Dist. 26C, Malheur Co.,* 233 Or 1, 376 P2d 406 (1962).

[6] *See Lovell v. School District No. 13,* 172 Or 500, 143 P2d 1236 (1943); *Rankin v. School District No. 9,* 143 Or 449, 23 P2d 132 (1933).

district's governmental immunity to the limits of the insurance policy. ORS 332.180 provided:

> "Any district school board may enter into contracts of insurance for liability covering all activities engaged in by the district, for medical and hospital benefits for students engaging in athletic contests and for public liability and property damage covering motor vehicles operated by the district, and may pay the necessary premiums thereon. * * *[7]

We reversed the holding of the trial court and held that ORS 332.180 was a "general law" which permitted a limited waiver of governmental immunity:

> "[T]he legislature considered the question of the school district's immunity and elected to retain it except to the extent that it was modified by ORS 332.180. * * *"

226 Or at 280, 360 P2d at 290. We held that the purchase of insurance pursuant to this statute waived the total immunity from liability in tort that the district would otherwise have.

> "* * * We think that the legislature intended to provide that the district's immunity would be lifted to the extent, and only to the extent that its activities were in fact covered by insurance as authorized by the statute. * * *
>
> "* * * [W]e hold that a school district which does not purchase liability insurance is immune from liability; and that its immunity is lifted only to the extent that it is authorized to purchase and in fact has obtained insurance covering the activity or activities in question."

226 Or at 280-281, 360 P2d at 290-291. We rejected arguments that the statute, in authorizing the purchase of insurance, did not intend to alter the immunity of the district.

## Legislative Changes

Our decision in *Vendrell* rested on our construction of ORS 332.180. At that time the statute provided for purchase of insurance for three purposes:

---

[7] The second sentence of this section read:

> "Failure to procure such insurance shall in no case be construed as negligence or lack of diligence on the part of the district school board or the members thereof."

This sentence remains unchanged and we do not need to consider it in this case.

    (1)   for liability covering all activities engaged in by the school district,

    (2)   for medical and hospital benefits for students engaging in athletic contests, and

    (3)   for public liability and property damage covering motor vehicles operated by the district.

The statutory sentence, grammatically, contained a serial construction of the kind, (1), (2) and (3). That section has since been amended and renumbered. It is these amendments and the legislative intent underlying them which are controlling in this case. SP contends that the changes in the statute do not alter the rule we established in *Vendrell* that the District's purchase of insurance constitutes a waiver of immunity to the limits of insurance policies applicable to a claim. On its part, the District argues and the courts below held that the statutory changes nullify the rule of *Vendrell* and fix absolute limits which are not extended by the purchase of insurance.

For the purpose of clarity we shall trace the amendments and renumbering. By chapter 575, section 5 of Oregon Laws 1961, the statute was amended in an act relating to traffic patrols. The amendment deleted no language but merely added new language considered desirable to deal with the creation and operation of traffic patrols. As amended, ORS 332.180 read:

> "Any district school board may enter into contracts of insurance for liability covering all activities engaged in by the district, including but not limited to the organization, supervision, control or operation of traffic patrols, as defined in ORS 336.450, for medical and hospital benefits for students engaging in athletic contests and in traffic patrols, as defined in ORS 336.450, and for public liability and property damage covering motor vehicles operated by the district, and may pay the necessary premiums thereon. * * * "

The effect of the amendment was to add to each of the first two purposes for which insurance might be purchased: (1) liability insurance with respect to the organization, supervision, control or operation of traffic patrols, and (2) insurance for medical and hospital benefits for students engaged

in traffic patrols.[8] The grammatical serial construction was maintained.

By chapter 100, section 155 of Oregon Laws 1965, the legislature, as part of a comprehensive reworking of the statutory law relating to education, amended the section by deletion of the language and punctuation shown in brackets as follows:

> "Any district school board may enter into contracts of insurance for liability covering all activities engaged in by the district[, including but not limited to the organization, supervision, control or operation of traffic patrols, as defined in ORS 336.450,] for medical and hospital benefits for students engaging in athletic contests and in traffic patrols[, as defined in ORS 336.560,] and for public liability and property damage covering motor vehicles operated by the district, and may pay the necessary premiums thereon. * * * "[9]

The District argues, and the Court of Appeals agreed, that the deletion of the first comma within the first set of brackets indicates a legislative intention to restrict the waiver of immunity under the first authorized purpose to liability arising from students' engagement in athletic contests or traffic patrol activities. If the sentence is read without the comma, the section authorizes the purchase of insurance for two purposes:

> (1) for liability covering all activities engaged in by the district for medical and hospital benefits for students engaging in athletic contests and in traffic patrols, and

> (2) for public liability and property damage covering motor vehicles operated by the district.

That reading of the statute discloses a poorly constructed sentence, the meaning of which is somewhat difficult to divine. That reading seems to result in a sharp departure from the kind of authority previously granted to a school district to purchase insurance to pay medical and hospital

---

[8] The 1963 Replacement Part for ORS chapter 332 discloses that the section was renumbered to ORS 332.235. This renumbering, of course, did not affect the meaning of the statute.

[9] The 1965 Replacement Part for ORS ch 332 discloses that the section was renumbered to ORS 332.435, its present number. Again, the renumbering is not found to have any effect for the purposes of this case.

benefits to a student injured in an athletic contest or in traffic control. Before the 1965 amendment a school district could purchase insurance to pay those benefits whether or not the district might be liable to the student. Elimination of the comma leaves a statutory sentence which seems to permit purchase of insurance to pay such benefits only if the need for benefits is occasioned by liability on the part of the district.

Chapter 100 of Oregon Laws 1965 was 176 pages in length, and its purpose was to reorganize and clarify the laws relating to education. It appears to us that the most probable purpose of the amendment of the code section under consideration here was to eliminate superfluous language concerning traffic patrols. We are convinced that the elimination of the first comma was simply a mechanical drafting mistake. If the comma is retained, the serial construction is retained; a district's authority to provide insurance to pay hospital and medical benefits to students without regard to liability is retained; and the only effect of the amendment is to eliminate unnecessary language from the code section, without changing its meaning. Reading the section as still having the comma, we see that it would authorize purchase of insurance for three purposes set forth in ordinary serial form:

(1)  for liability covering all activities engaged in by the district,

(2)  for medical and hospital benefits for students engaging in athletic contests and in traffic patrols, and

(3)  for public liability and property damage covering motor vehicles operated by the district.

The controlling change in ORS 332.435 came in 1967, when the legislature reenacted and amended this section as part of the enactment of the Oregon Tort Claims Act. By section 13 of the Act, the legislature amended ORS 332.435, deleting the phrase "and for public liability and property damage covering motor vehicles operated by the district."[10] Considering this deletion in its statutory context, as part of the comprehensive plan to establish governmental liability in tort subject to monetary limitations, we

---

[10] Or Laws 1967, ch 627, § 13.

conclude that the legislature intended this deletion to restrict the rule we had established in *Vendrell.* We conclude that the legislature meant by the deletion of the reference to motor vehicles to exclude liability for motor vehicle accidents from the *Vendrell* rule and put this liability exclusively under the other provisions of the Tort Claims Act which limit liability regardless of insurance.

SP emphasizes the legislature's retention of the expansive language "covering all activities engaged in by the district." It contends the deletion merely removed surplus language, so that the rule in *Vendrell* controls to the exclusion of the liability limits set forth in ORS 30.270. In the circumstances, we do not find the inclusive language controlling. In the context of the passage of the Tort Claims Act, the deletion of the reference to motor vehicles is nearly as telling as would be a specific amendment stating that the section did not apply to insurance covering motor vehicles.

Having determined that ORS 332.435 does not, of itself, abrogate the limits on liability established by the Oregon Tort Claims Act, we must consider whether that Act, viewed as a whole, indicates a legislative intent to retain the rule of *Vendrell.* Examining the Act, we find two sections significant for the resolution of this case: section 4, now ORS 30.270, *supra* n. 2, and section 6, ORS 30.280 (since superseded by ORS 30.282). The first of these set specific limits on the liability of public bodies.[11] The second allowed governmental bodies to purchase insurance. As enacted, section 6 read, in pertinent part:

"(1)   The governing body of any public body may procure insurance against liability of the public body and its officers, employees and agents.

"(2)   Such insurance may include coverage for the claims specified in section 3 of this Act. The procurement of such insurance shall not be deemed a waiver of immunity."[12]

---

[11] The limits set by the 1967 Tort Claims Act were $25,000 per accident or occurrence for property damage; $50,000 per claimant for other injury; and $300,000 total per accident or occurrence. These were increased by Or Laws 1975, ch 609 § 13.

[12] Section 3 of the Act detailed those claims from which governmental bodies remained totally immune.

Before this court SP argues that this cross-reference restricts the meaning of this provision. It contends that section 6, ORS 30.280, referred only to claims for which local bodies remained totally immune and, with regard to claims for which immunity remained intact, and only these claims, the purchase of insurance did not waive immunity. SP argues that in stating such a rule for immune claims, the legislature implied the converse rule for claims for which the Act established liability. Thus, under ORS 30.280 purchase of insurance in excess of the limits prescribed by ORS 30.270 amounts to a waiver of those limits for claims such as the one in the instant case.

■ We do not think ORS 30.280 supports such an assertive reading. While this section is not a model of clarity, it does not support the reading SP advocates. The authority of public bodies to buy insurance for immune claims is discretionary: the public body *may* procure insurance; insurance *may* include coverage of claims on which there is immunity.[13] Insurance presumably will provide coverage for claims for which the governmental body has liability, whether or not it covers those for which immunity remains. This reading of the statute makes the second clause consistent with the overall structure of the Act: the purchase of insurance covering claims for which the Tort Claims Act established limits on liability shall not be deemed to waive the immunity which remains, whether or not the insurance covers these immune claims.

---

[13] The dissenting judges anchored their position on ORS 30.280(3) (1967). *See* 50 Or App at 579-581, 624 P2d at 172-173. Part of their protest stems from the apparent incongruity of authorizing the purchase of insurance for claims on which the District cannot be held liable. We find this incongruity is more apparent than real. This court noted in *Vendrell* that a public body may procure insurance for purposes other than indemnification from judgment awards in liability actions:

"[I]t is pointed out that the policy requires the insurer to defend the district in any litigation; that the district is provided with fast and efficient claim investigation service; that the insurer is required to pay all attorney's fees, court cost and other expenses of investigating and defending claims; that reimbursement for emergency medical care furnished by the district is covered and that the district is protected in case the doctrine of immunity is abrogated during the life of the policy."

226 Or at 282, 360 P2d at 291; *see also* Note, 33 Minn L Rev 634, 642 (1949); Gibbons, *Liability Insurance and the Tort Immunity of State and Local Government,* 7 Duke L J 588, 592 (1959).

■ We hold that the Oregon Tort Claims Act, as passed in 1967, established monetarily limited liability and that the provisions of ORS 30.280 did not incorporate the rule of *Vendrell* into that Act. Thus, the limitations on liability set forth in ORS 30.270 apply under the 1967 Act regardless of the purchase of insurance in excess of these limits.

## Legislative Amendments of the Tort Claims Act

■ . Between 1967 and the time of this collision, the legislature twice amended the Tort Claims Act. The changes made by chapter 429 of Oregon Laws 1969 are not germane to this case.

Chapter 609 of Oregon Laws 1975 is the major amendment of the Tort Claims Act to date. This amendment repealed ORS 30.280, replacing it with ORS 30.282, the current provision, which states:

> "The governing body of any local public body may procure insurance against liability of the public body and its officers, employes and agents acting within the scope of their employment or duties, or may establish a self-insurance fund against such liability of the public body and its officers, employes and agents and if the public body has authority to levy taxes, it may include in its levy an amount sufficient to establish and maintain such a fund on an actuarially sound basis."

Section 13 of the 1975 amendment increased the limits on liability under ORS 30.270 to $100,000 per claimant, although retaining the limit of $300,000 per accident or occurrence.

Unlike ORS 30.280, ORS 30.282 does not explicitly provide that the purchase of insurance does not alter the limits of liability. SP and the dissenting opinion below would have us read this deletion as indicating that the legislature approved a *Vendrell*-like policy: the limits of

---

We note in passing that we consider the District's intent as stated in the course of this litigation to be of questionable relevance. As our past cases have held, waiver of immunity must be based on general law enacted by the legislature, not on the unilateral and unstated actions of the public body procuring the insurance. *Compare Vendrell; Elmore v. Aloha Sanitary Service*, 256 Or 267, 473 P2d 130 (1970); *Hale v. Smith*, 254 Or 300, 460 P2d 351 (1969).

liability would be increased to the limits of applicable insurance policies. *See* 50 Or App 581-583, 624 P2d at 174-175 (Roberts, J., dissenting). They insist that whether or not the Act as passed in 1967 was intended to overrule our holding in *Vendrell,* the 1975 amendments were intended to revive that rule.

We do not believe that Chapter 609 considered as a whole supports this interpretation. The various other sections of the statute evince an intent to retain limited liability for public bodies. Section 13(4) of the statute, now ORS 30.270(4), provides:

> "Liability of any public body * * * on claims arising out of a single accident or occurrence, *shall not exceed* in the aggregate the amounts limited by subsection (1) of this section [i.e., ORS 30.270(1)]." (Emphasis added.)

To read ORS 30.282 as abrogating these limits where there is applicable insurance, we would have to rule that the legislature which set such unequivocal limits in Section 13(4) intended to waive these by implication by another provision of the same act. The absence of specific language declaring that the purchase of insurance beyond the limits of liability set by ORS 30.270(1) would not extend liability beyond those limits, taken in the context of the statute as a whole, is not compelling. We conclude that the legislature intended to have the limits of ORS 30.270(1) control, regardless of the presence of insurance beyond those limits.

Considering Chapter 609 in its entirety, we are not persuaded that the repeal of ORS 30.280 in 1967, removing the non-waiver language, indicates an intent to revive the *Vendrell* rule. Rather, the legislature felt that the unqualified, preclusive language of ORS 30.270(4), "Liability * * * shall not exceed," expressed a clear, though implicit, policy barring waiver. By repealing ORS 30.280, the legislature meant only to eliminate what it regarded as superfluous verbiage. We believe that the legislature considered the unequivocal language of ORS 30.270(4) sufficiently clear as to render the non-waiver language unnecessary.

We therefore conclude that the monetary limit of liability against the District is $100,000 per claimant, to a

total of $300,000 for all claims arising from this collision. The decision of the Court of Appeals is therefore affirmed.

Affirmed.