Argued and submitted May 21, resubmitted In Banc November 7, 1984, affirmed January 23, reconsideration denied March 8, petition for review withdrawn May 29, 1985 (299 Or 204)

# RICHARD THOMAS WATSON,
*Appellant,*

*v.*

# STATE OF OREGON et al,
*Respondents.*

## (16-83-02462; CA A29628)

694 P2d 560

David Moule, Eugene, argued the cause and filed the brief for appellant.

Roy E. Pulvers, Assistant Attorney General, Salem, argued the cause for respondent State of Oregon. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

No appearance for respondent Stadler.

WARREN, J.

Rossman, J., dissenting.

## WARREN, J.

Plaintiff sued to vacate a judgment in which he was adjudicated to be the father of defendant Stadler's child and ordered to pay child support. The trial court dismissed the complaint, on defendants' motion, for failure to state ultimate facts sufficient to constitute a claim. We affirm.

Defendants petitioned the court in 1980 to establish that plaintiff is the father of the child. During the pendency of that proceeding, defendant Stadler testified in a deposition that plaintiff is the father of her child and that she had not had sexual relations with any one other than plaintiff during the probable time of conception. Plaintiff did not seek blood tests during that proceeding, although he could have required the mother and child to submit to the tests under ORS 109.252. Instead of litigating the issue of his paternity, he stipulated that he is the father. The court entered a judgment. Plaintiff did not appeal.

In 1982, plaintiff experienced doubts as to his paternity and arranged to have blood tests performed on himself, the child and the mother. The results of those tests exclude plaintiff as the biological father. In his complaint in this proceeding, plaintiff alleged that he "was prevented from impeaching the paternity and the judgment of paternity by the fraud, accident or the act of Defendant Faith Darlene Stadler, unmixed with negligence or fraud on his own part."

■ Considering plaintiff's complaint in its most favorable light, we construe it as a prayer to vacate a judgment procured by fraud.[1] Because of a strong policy favoring the finality of judgments, courts will vacate a judgment on the ground of fraud only in exceptional cases.

" 'A court of equity will not lend its aid unless the party

---

[1] For the first time plaintiff argues in his reply brief that a judgment which is entered pursuant to a stipulation may be vacated on any ground which would justify the rescission of a contract, citing *State ex rel Adult & Family Ser. v. Hansen,* 54 Or App 47, 634 P2d 256 (1981). Because plaintiff did not raise this contention in either the circuit court or his opening brief in this court, we could decline to consider it. *Espinosa v. Southern Pacific Trans.,* 50 Or App 561, 573 n 15, 624 P2d 162, *affirmed* 291 Or 853, 635 P2d 638 (1981). Nevertheless, we find his argument to be without merit. Plaintiff does not point to any consideration which supported his stipulating to a judgment of paternity, nor can we find any. Accordingly, we do not view this judgment as being in the nature of a contract.

claiming its assistance can impeach the judgment by facts or on grounds of which he could not have availed himself at law, or was prevented from doing it by fraud or accident or the act of the opposite party, unmixed with negligence or fraud on his own part. When a party has once an opportunity of being heard, and neglects to do so, he must abide the consequences of his neglect. A court of equity can not relieve him, though the judgment is manifestly wrong.'" *Mattoon v. Cole,* 172 Or 664, 670, 143 P2d 679 (1943), quoting 2 Freeman on Judgments, Second Edition, § 486.

In order for plaintiff to show that he was prevented from impeaching the judgment by defendant's fraud, he must plead and prove fraud extrinsic to the proceedings; an allegation of perjury in the course of the proceedings is insufficient.

"* * * It is not every species of fraud, however, that vitiates a judgment. It is fraudulent to give perjured testimony and such evidence may result in a judgment but, according to the great weight of authority, equity will not interfere for that reason alone, since the unsuccessful party had his opportunity to refute the false testimony. If the rule were otherwise, there would be no end to litigation. * * *

"* * * * *

"It is only when the fraud is extrinsic or collateral to the matter actually tried that equity will enjoin enforcement of the judgment * * *." *O.-W. R. & N. Co. v. Reid,* 155 Or 602, 609-10, 65 P2d 664 (1937).

*See also Slate Const. Co. v. Pac. Gen. Con., Inc.,* 226 Or 145, 151, 359 P2d 530 (1961).

*United States v. Throckmorton,* 98 US 61, 25 L Ed 93 (1878), was a suit to set aside a decree allegedly obtained by the use of a fraudulent document and perjured testimony. In affirming the circuit court's sustaining a demurrer to the bill, the Supreme Court described the types of extrinsic fraud which may support the setting aside of a judgment.

"* * * Where the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practised on him by his opponent, as by keeping him away from court, a false promise of a compromise; or where the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff; or where an attorney fraudulently or without authority assumes to represent a party and connives at his

defeat; or where the attorney regularly employed corruptly sells out his client's interest to the other side,—these, and similar cases which show that there has never been a real contest in the trial or hearing of the case, are reasons for which a new suit may be sustained to set aside and annul the former judgment or decree, and open the case for a new and a fair hearing. * * *

"* * * * *

"On the other hand, the doctrine is equally well settled that the court will not set aside a judgment because it was founded on a fraudulent instrument, or perjured evidence, or for any matter which was actually presented and considered in the judgment assailed * * *" 98 US at 65-66.

It is clear that the fraud alleged in this case, perjured deposition testimony, was intrinsic to the proceeding. Intrinsic fraud may not provide the basis for setting aside a judgment, and it does not matter that the judgment was entered pursuant to a stipulation and not after a trial on the merits. Judgments entered after default or on the parties' stipulation have the same solemn character as judgments entered after trial. Although we have not found any Oregon cases in which a stipulated judgment was attacked for fraud, a similar case was decided by the highest court of New York.

*Crouse v. McVickar,* 207 NY 213, 100 NE 697 (1912), was a suit to set aside a decree in a probate proceeding. The executors of the will had brought an action to determine whether a person was a legitimate child of the deceased and entitled to share in the estate. Before trial of the action, the parties entered into a stipulation that the person should receive one-half of the residuary estate, and judgment was entered dividing the estate as stipulated. Subsequently, suit was filed to set aside the judgment on the ground that the claim was fraudulent and that plaintiff had relied on the false statements in entering into the stipulation. The New York Court of Appeals held that the complaint alleged intrinsic fraud and did not state facts sufficient to constitute a basis to set the judgment aside.

"The fact that the decree now sought to be vacated rests on stipulation does not differentiate it in principle from one where the judgment was rendered after hearing evidence. The stipulation acted as a substitute for evidence. Each party being afraid of the effect of the evidence of the adverse party

stipulated that the adversary's claim should prevail to the extent of one-half. No fraud is charged except in statements made as to the issue itself. If perjury in that respect made on the witness stand and inducing a court or jury to render an erroneous decision would not support an action to set aside the judgment, it is difficult to see why it should be of more moment because it frightened the parties into a compromise." 207 NY at 219.

We hold that the circuit court did not err in dismissing plaintiff's complaint for failure to state a claim for relief. The fraud of which plaintiff complains, perjured deposition testimony, was intrinsic to the proceeding below, because it concerned the very issue in dispute, and cannot provide the basis for setting aside the judgment. Although plaintiff may have been induced by the mother's deposition to stipulate to a judgment, he was not *prevented* from disputing her testimony and attempting to disprove his paternity. The strong policy favoring the finality of litigation dissuades us from allowing plaintiff to upset a judgment to which he consented without seeking to present evidence on the disputed issue.

Affirmed.

**ROSSMAN, J.,** dissenting.

Surely, justice cannot be so blind. This is no way to create a father. Plaintiff was fraudulently induced by mother's outright lie to enter into a stipulated judgment of paternity. Blood tests have now conclusively proved that he cannot possibly be the child's biological father. Nevertheless, the majority, in the name of *finality of judgments,* concludes that plaintiff is not entitled to relief from this manifest injustice. Because I believe that the majority misinterpets the law in this area and completely ignores very significant public policies, I must dissent.

As the majority notes, judgments cannot be attacked collaterally, except for fraud, duress or some equally egregious reason. *Eagen and Eagen,* 292 Or 492, 496, 640 P2d 1019 (1982). It also is necessary to establish that one was not negligent in the manner in which the original judgment was procured. There is no claim of any duress in this case, so in order for plaintiff to prevail he must show that the judgment was induced by fraud *or* some other egregious circumstances *and* that he was not himself negligent.

In order to set aside a judgment for fraud, one must plead and prove fraud *extrinsic* to the proceedings. The majority characterizes mother's false testimony as *intrinsic* fraud and therefore concludes that it does not provide a basis for setting aside the judgment. I believe that the majority drastically oversimplifies the analysis. In so doing, it looks outside our jurisdiction for guidance and completely ignores Oregon case law which has a direct bearing on this matter. Admittedly, plaintiff must prove extrinsic fraud. However, the distinction between extrinsic and intrinsic fraud is not nearly so clear as the majority suggests. In general, extrinsic fraud pertains, not to the judgment itself, but to the manner in which it was procured. Intrinsic fraud, in contrast, relates to an issue that was involved in the original action. Contrary to what the majority contends, in Oregon perjury can be either extrinsic or intrinsic fraud. As was stated in *Larson v. Heintz Const. Co. et al*, 219 Or 25, 70, 345 P2d 835 (1959):

> "* * * [E]quity will not set aside a judgment for intrinsic perjury, * * * but [it] may where the perjury is extrinsic and prevents a party from getting all the facts. * * *"

*See also O.-W. R. & N. Co. v. Reid*, 155 Or 602, 604, 65 P2d 664 (1937).

I would go a step further and suggest that, depending on the circumstances, perjury can possess elements of both extrinsic or intrinsic fraud. Defendant's fraudulent testimony clearly related to the central issue of paternity and, therefore, was intrinsic. On the other hand, that same testimony prevented plaintiff from getting all the facts, induced him to stipulate to paternity and thereby foreclosed his opportunity for a trial on the merits. Given the sensitive nature of this case, I would conclude that the alleged fraud was sufficiently extrinsic to provide a basis for vacating the judgment.

As noted earlier, even if plaintiff establishes sufficient fraud or egregious conduct, he must still show a lack of negligence on his own part. It is the state's position that plaintiff failed to plead specific facts showing that his failure to request blood tests at the time of the original suit was unmixed with his own negligence. *See Dixon v. Simpson et al.*, 130 Or 211, 279 P 939 (1929); *Bowsman v. Anderson*, 62 Or 431, 123 P 1092, 125 P 270 (1912). The state urges that plaintiff's belief in mother's deposition testimony does not

excuse his neglect in obtaining verifying blood tests at the time of the initial suit. *See* ORS 109.252. Essentially, the state seems to be asking us to hold that plaintiff was negligent as a matter of law, because he believed in the truthfulness of the state's principal witness. In retrospect, it is obvious that plaintiff misjudged mother. However, his failure to anticipate that she, a woman he had known intimately, would use deceit to entrap him can hardly be called negligent as a matter of law.

Moreover, plaintiff was represented by an attorney, who I assume participated in the deposition and the stipulation. I am not prepared to hold that plaintiff was negligent for not getting a blood test when he presumably entered into the stipulation on the advice of counsel. Finally, although plaintiff concedes that his alleged negligence may become a legitimate defense at trial, he suggests that he is, at least at this stage of pleading, entitled to all reasonable inferences which may be drawn from the pleadings.

In any event, plaintiff asserts another theory which perhaps even more clearly entitles him to the relief he seeks. He contends that we should analyze this case under a less demanding test involving contract principles. His premise is that the stipulation gave rise to a *consent judgment,* which is in the nature of a contract. *See Nieminen v. Pitzer,* 281 Or 53, 573 P2d 1227 (1978). Granted, plaintiff did not apprise the trial judge of this theory and, normally, a case on appeal must be argued on the same theory on which it was presented to the court below. However, a theory raised for the first time on appeal may be considered when the record discloses that an "error is manifest and that the ends of justice will not otherwise be satisfied." *State v. Hickmann,* 273 Or 358, 360, 540 P2d 1406 (1975).

Many important policies are at issue in this case. On the one hand is the importance of the finality of judgments. That policy conserves judicial resources and preserves respect for the courts by preventing the relitigation, in a subsequent proceeding, of a controversy once determined. It also serves to protect parties from the burdens of protracted litigation. *See Erwin v. City of Portland,* 23 Or App 734, 738, 543 P2d 695 (1975). On the other hand, public policy demands that the utmost care be taken whenever we endeavor to determine familial relationships and responsibilities. We are faced here

with a manifest injustice that could well interfere with the child's efforts, in the future, to establish a legal relationship with his biological father. Similarly, plaintiff has an interest in being relieved of an obligation which he was duped into assuming. Finally, justice is not well served by allowing defendants to continue benefiting from mother's wrongdoing. Considering the egregious nature of this case, and all of the policies at stake, we should conclude that we are able to reach plaintiff's new arguments.

As plaintiff correctly notes, a judgment or decree entered by the consent of the parties, such as here, is in the nature of a contract and can only be set set aside on grounds adequate to justify the rescission of a contract.[1] *Nieminen v. Pitzer, supra,* 281 Or at 57; *State ex rel Adult & Family Ser. v. Hansen,* 54 Or App 47, 50, 634 P2d 256 (1981). Fraud can provide a proper basis for rescission. The elements of actionable fraud allowing an avoidance of a contract consist of (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) the intent that it be acted on, (6) the injured party's ignorance of its falsity, (7) reliance on the truth of the representation and (8) right to rely on its truth. *Gardner v. Meiling,* 280 Or 665, 671, 572 P2d 1012 (1977). The state concedes that the intrinsic/extrinsic fraud distinction is not relevant in contract analysis. One must merely allege and prove a causal connection between the fraud and the bargain. *Gardner v. Meiling, supra.* Considering plaintiff's complaint in its most favorable light, we should conclude that he has alleged a sufficient causal connection between mother's alleged perjury and the consent judgment.

The state still contends, even under the contract theory, that plaintiff's failure to obtain blood tests precludes his getting the relief he seeks in this case. It argues that, because of his neglect, he had no right to rely on mother's representations. Although there are Oregon cases which hold that a party's reliance on a representation must be reasonable,

---

[1]The majority asserts that the judgment entered in this case is not in the nature of a contract, because the stipulation was not supported by consideration. Consideration in a consent decree or judgment is self-evident. The parties were spared the expense of having to prosecute or defend the original action to its conclusion. That resulted in a saving of time and money. Thus, each received a very tangible benefit as a direct result of the stipulation.

*Coy v. Starling,* 53 Or App 76, 80, 630 P2d 1323 (1981), the Supreme Court has consistently held that one who has been induced to enter a contract by an intentional misrepresentation may rescind the contract, *even though his reliance may have been negligent. Bodenhamer v. Patterson,* 278 Or 367, 374, 563 P2d 1212 (1977). "[I]t is better to encourage negligence in the foolish than fraud in the deceitful." *Hansen v. Holmberg,* 176 Or 173, 184, 156 P2d 571 (1945). Therefore, the nature of plaintiff's reliance is not a proper issue in this case.

Moreover, defendants may well lack standing to raise negligent reliance as a defense.

> "* * * Where one assumes to have knowledge of a subject of which the other is ignorant and knowingly makes false representations concerning it upon which the other relies, the party who thus induced belief will not be heard to say that the party who relied upon him was guilty of negligence." *Burgess v. Charles A. Wing Agency,* 139 Or 614, 623, 11 P2d 811 (1932).

Mother alone knew the truth about her sexual relations during the period in question. With the exception of his own relations with mother, plaintiff was ignorant of the matter. Because mother's representations induced plaintiff's belief that he was the father, she cannot now claim that his belief was unreasonable.

I would reverse and remand for trial.

Gillette, Young and Newman, J.J. join in this dissent.