Argued and submitted December 2, 1988, affirmed September 6, 1989

STATE ex rel ALVAREZ,
*Respondent,*

*v.*

JIMINEZ,
*Appellant.*

(D83-02-61164; CA A45396)

779 P2d 175

Eden Rose Brown, Certified Law Student, Portland, argued the cause for appellant. On the brief was Kathleen Herron, Portland.

Katherine Brown, Portland, argued the cause for respondent. With her on the brief was Gevurtz, Menashe & Hergert, P.C., Portland.

Before Joseph, Chief Judge, and Rossman and Graber, Judges.

ROSSMAN, J.

**ROSSMAN, J.**

In this filiation proceeding, father[1] appeals a trial court order that denied his motion to set aside the judgment that held him to be the father of mother's child. The basis for that judgment was his admission of paternity. He asserts that the trial court denied him the due process of law guaranteed by the Fourteenth Amendment,[2] because it did not inform him before his admission that he had a right to publicly-paid blood tests, publicly-paid counsel and a jury trial. We affirm.

Mother, who at the time was represented by the Multnomah County District Attorney, filed this proceeding on April 1, 1983, seeking child support from father. In May, father was served in California with the summons and complaint, which advised him that he was "entitled to employ and be represented by an attorney at the Court hearing." When he appeared at the hearing in Portland on June 14, he did not have a lawyer. He alleges in support of the motion that he knew that he could hire a lawyer at his own expense but that he did not have enough money to do so and also to travel to Portland from California.

The hearing took only a short time and proceeded this way:

"[DEPUTY DISTRICT ATTORNEY]: In connection with the Jimenez case, Your Honor, this is a paternity petition which we filed on behalf of the petitioning mother, wherein she charges that the respondent, who is now before the court, is the father of her child, * * * born June 7, 1977. The respondent is now before the court to either admit or deny paternity. If denial is entered, the court administrator will set it for trial.

"[COURT]: Mr. Jiminez, do you admit you're the father of the child?

"[FATHER]: Mmm-hmm.

---

[1] At the trial court, the mother of the child was designated "petitioner" and the putative father was designated "respondent." On appeal, the mother is "respondent" and the putative father is "appellant." For clarity, we will refer to the parties as "father" and "mother," except for the award of costs, where we use the designations on appeal.

[2] Father raises no issues under the Oregon Constitution.

"[COURT]: All right. [Pause.] And you're also asking that we set support?

"[DEPUTY DISTRICT ATTORNEY]: Yes, there are a number of items in the prayer, Your Honor. I don't know if the court has time this afternoon to go into them."

In response to several questions about his financial situation, father stated that he was employed, earned $25,000 annually, took home about $500 per month after taxes and all deductions and thought that he could afford to pay $175 per month in child support. The court then entered a temporary support order. The deputy district attorney arranged for father to sign a formal admission of paternity, *see* ORS 109.155,[3] and the hearing concluded. Mother was present but did not speak. Approximately three years later, father moved to set aside the order.

■ Father argues that the trial court's failure to inform him of his rights denied him due process under the Fourteenth Amendment. According to father, under *Mathews v. Eldridge,* 424 US 319, 96 S Ct 893, 47 L Ed 2d 18 (1976), the requirements of due process must be determined by balancing the private interest at stake, the governmental interests at stake and the overall risk that the procedures used in a particular proceeding will result in an erroneous decision. He contends that, given the important financial, legal and moral ramifications of establishing a family relationship, the interests of a putative father in an accurate paternity determination far outweigh the state's interest in a quick or efficient filiation proceeding. Moreover, he argues, unless a putative father knows of his rights to an attorney, to a jury trial and possibly to publicly-paid blood tests, the risk of an inaccurate determination is high. Thus, he concludes, due process requires that a putative father know his rights before making an admission, *i.e.,* that the admission be voluntary, knowing and intelligent. Because he was unrepresented by counsel at the

---

[3] ORS 109.155(1) provides:

"The court or the jury, in a private hearing, shall first determine the issue of paternity. If the respondent admits the paternity, such admission shall be reduced to writing, verified by the respondent and filed with the court. If the paternity is denied, corroborating evidence, in addition to the testimony of the parent or expectant parent, shall be required."

Father's argument that the statute is void, because it fails to provide sufficient procedural safeguards, is without merit.

time of his admission, father asserts, the trial court's failure to inform him of his rights deprived him of any opportunity to make an intelligent decision about whether to admit or deny paternity.

Assuming, without deciding, that the procedures used in the initial hearing might not have been wholly appropriate, we cannot say that father was denied due process. He admits that he knew that he had a right to an attorney at the hearing, and he was present when the Deputy District Attorney stated that a trial date would be set if he denied paternity. *See* ORS 109.135(1). In his affidavit in support of his motion to set aside the judgment, he stated that he asked mother in the district attorney's office what the child's blood type was, thus indicating that he knew of the availability of blood testing. He may have been unaware that the state might provide publicly-paid blood tests and appointed counsel if he could not afford them.[4] However, the record does not support his claimed inability to pay at the time of the hearing. Father received notice of those rights to which he was entitled—the right to counsel and to a jury trial—and we conclude that the trial court's failure to advise him thoroughly did not deny him a fair hearing.

Finally, we note that, according to father, he was aware *at the hearing* that there were two or three other men who might have had sexual relations with mother at about the time when she became pregnant. Despite that knowledge, he waited more than three years before seeking to have the judgment set aside. He had the opportunity to present evidence on the paternity issue, but he voluntarily, intelligently and knowingly chose to forego that option. *See Watson v. State of Oregon,* 71 Or App 734, 739, 694 P2d 560 (1985). It follows that the trial court correctly denied his motion to set aside the judgment.

Affirmed.

---

[4] *State ex rel Adult & Family Ser. v. Stoutt,* 57 Or App 303, 312 n 7, 644 P2d 1132, *rev den* 293 Or 801 (1982), *cert den* 461 US 928 (1983), left open the question of whether, under different facts, due process would require appointment of counsel in Oregon filiation proceedings. However, father's showing in support of his claim to appointed counsel is, at best, weaker than that of the putative father in that case.